# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>     By the U.S. Department of Justice<br>     1100 L Street NW<br>     Washington, D.C., 20001<br><br>          *Plaintiff*,<br><br>          –v.–<br><br>PETER K. NAVARRO,<br>     801 Pennsylvania Avenue NW<br>     Unit 1021<br>     Washington, D.C., 20004<br><br>          *Defendant.* | Case No. 1:22-cv-2292 |

## COMPLAINT

## INTRODUCTION

1. Defendant Peter K. Navarro was employed by the White House Office in the Executive Office of the President from January 20, 2017, until January 20, 2021. He was Deputy Assistant to the President and Director of the National Trade Council from his hiring until April 29, 2017, when he was appointed Assistant to the President and Director of the Office of Trade and Manufacturing Policy. In addition to those responsibilities, in March 2020, then-President Donald J. Trump appointed Mr. Navarro to coordinate the government's use of the Defense Production Act, 50 U.S.C. § 4501 *et seq.*, to respond to the COVID-19 pandemic.

2. The Presidential Records Act (PRA), 44 U.S.C. § 2201 *et seq.*, creates a framework for the preservation of certain records, termed "Presidential records" (Presidential records) by the statute, *id.* § 2201(2), created or received by the President, Vice President, and persons who advise and assist them, like Mr. Navarro (Covered Individuals).

1

3. Subject to conditions and exceptions not relevant here, the PRA defines a Presidential record as a record generated or received by a Covered Individual in the course of assisting with the discharge of the President's official duties. *See* 44 U.S.C. § 2201(2). The United States "retain[s] complete ownership, possession, and control of Presidential records." *Id.* § 2202.

4. The PRA continues to apply when non-official electronic accounts are used to perform official duties. *See, e.g.*, 44 U.S.C § 2209. Among other responsibilities, a Covered Individual must copy any Presidential record sent on a "non-official electronic message account" to his official government email account within 20 days, and to otherwise transfer Presidential records received on a non-official account to the National Archives and Records Administration (NARA) at the end of each presidential administration. *See id.*; *id.* §§ 2202-03.

5. At the end of a presidential administration, the Archivist of the United States is, under the PRA, required to "assume responsibility for the custody, control, and preservation" of Presidential records and to "make such records available to the public as rapidly and completely as possible consistent with the provisions of this chapter." *Id.* § 2203.

6. While serving in the White House, Mr. Navarro used at least one non-official email account—an account hosted by the non-official service ProtonMail—to send and receive messages constituting Presidential records.

7. Mr. Navarro did not copy each email or message constituting Presidential records that was sent or received on his non-official account or accounts to his official government email account.

8. Following the end of the Trump Administration, the Archivist, through the General Counsel of the NARA, attempted to contact Mr. Navarro to secure the Presidential records that

Mr. Navarro had not copied to his government email account. Mr. Navarro did not respond to NARA's communications.

9. Prior to filing this suit, in an effort to avoid litigation, Department of Justice counsel contacted Mr. Navarro by email and United States mail to secure the Presidential records that Mr. Navarro had not copied to his government email account. Discussions with Mr. Navarro's counsel to secure the return of Presidential records ultimately proved unsuccessful. Mr. Navarro has refused to return any Presidential records that he retained absent a grant of immunity for the act of returning such documents.

10. Mr. Navarro is wrongfully retaining Presidential records that are the property of the United States, and which constitute part of the permanent historical record of the prior administration.

11. Mr. Navarro's wrongful retention of Presidential records violates District of Columbia law, federal common law, and the PRA.

12. Plaintiff asks that the Court (i) order Mr. Navarro to transmit forthwith the wrongfully withheld Presidential records to the United States, and (ii) award all other relief that the Court deems appropriate.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction under 28 U.S.C. § 1345 because this is a "civil action[ ] commenced by the United States" that involves the application of one or more federal statutes, namely, the PRA. The Court also has subject matter jurisdiction under 28 U.S.C. § 1331 because this suit includes claims that arise under the laws of the United States.

14. This Court has personal jurisdiction over Mr. Navarro because he is domiciled in this judicial district and/or because this suit arises out of or relates to Mr. Navarro's contacts with this district.

15. Venue is appropriate in this judicial district under both 28 U.S.C. § 1391(b)(1) and § 1391(b)(2).

## PARTIES

16. Plaintiff, the United States, preserves Presidential records to "assure that the activities, deliberations, decisions, and policies that reflect the performance of the President's constitutional, statutory, or other official or ceremonial duties are adequately documented." 44 U.S.C. § 2203. The United States has a right to sue to protect its property interest in Presidential records. *See, e.g., Wyandotte v. Transp. Co. v. United States*, 389 U.S. 191, 201 (1967) (noting the "general rule that the United States may sue to protect its interests").

17. Defendant, Mr. Navarro, served as Assistant to the President and Director of the White House Office of Trade and Manufacturing Policy, as well as Deputy Assistant to the President and Director of the White House National Trade Council. *See* Trump White House, People, Peter Navarro, https://trumpwhitehouse.archives.gov/people/peter-navarro/. Also, in March 2020, former President Trump appointed Mr. Navarro to be the National Defense Production Act Policy Coordinator. Remarks by President Trump, Vice President Pence, and Members of the Coronavirus Task Force in Press Briefing, March 28, 2020, https://trumpwhitehouse.archives.gov/briefings-statements/remarks-president-trump-vice-president-pence-members-coronavirus-task-force-press-briefing-13/.

## THE PRESIDENTIAL RECORDS ACT

18. According to the PRA, the term "Presidential records" means, with certain conditions and exceptions, "documentary materials, or any reasonably segregable portion thereof, created or received by the President, the President's immediate staff, or a unit or individual of the Executive Office of the President whose function is to advise or assist the President, in the course of conducting activities which relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President." 44 U.S.C. § 2201.

19. The PRA also states that "[t]he United States shall reserve and retain complete ownership, possession, and control of Presidential records; and such records shall be administered in accordance with the provisions of this chapter." *Id.* § 2202.

20. Under the PRA, at the end of a presidential administration, the Archivist of the United States is required to "assume responsibility for the custody, control, and preservation" of Presidential records and "make such records available to the public as rapidly and completely as possible consistent with the provisions of this chapter." *Id.* § 2203. A President can designate his Presidential records as restricted for up to 12 years. *Id.* § 2204. During the restricted period, however, courts, Congress, and the incumbent President may request "special access" to the Presidential records. *Id.* §§ 2205(2)(A)-(C).

21. E-mail and other electronic messages, including electronic messages sent and received on non-official electronic message accounts, constitute Presidential records to the same extent as hard copy documents. *Id.* §§ 2201, 2209.

22. The PRA provides explicit direction regarding the proper handling of Presidential records sent using non-official electronic accounts: It requires Covered Individuals to "cop[y] their "official electronic messaging account" when sending a communication using a non-official account or to "forward[] a complete copy" of an email sent on their non-official account to their

"official electronic messaging account . . . not later than 20 days after the original creation or transmission" of the record. *Id.* §§ 2209(a)(1), (a)(2).

23. The PRA does not separately address the handling of Presidential records received—as opposed to sent—on a non-official electronic account. *Id.* § 2209. But Presidential records received on a non-official account do not lose their status as Presidential records merely because they exist on a non-official electronic account. *See id.* § 2201 (defining Presidential records as including records "*received* by the President, the President's immediate staff, or a unit or individual of the Executive Office of the President . . . (emphasis added))). And like all other Presidential records, they are the property of the United States, *id.* § 2202, and are required to be turned over to the Archivist upon the end of the administration, *id.* § 2203.

## FACTUAL BACKGROUND

24. In February 2017, the White House Counsel's Office issued a memorandum to White House personnel regarding the use of non-official email accounts to conduct official business, writing: "If you ever send or receive email that qualifies as a presidential record using any other account [i.e., other than the official government account], you must preserve that email by copying it to your official EOP email account or by forwarding it to your official email account within twenty (20) days." Memorandum for All Personnel, through White House Counsel Donald F. McGahn II, Feb. 22, 2017 (WHCO Memorandum), at 2 (attached as Exhibit 1). In 2019, after a new White House Counsel was appointed, substantively identical guidance was re-issued under the new Counsel's name.

25. The WHCO Memorandum states "that presidential records are the property of the United States . . . When you leave EOP employment, you may not take any presidential records with you." *Id.* at 3.

26. Mr. Navarro served first as the Deputy Assistant to the President and Director of the National Trade Council, and later as the Assistant to the President and Director of the Office of Trade and Manufacturing Policy. In these roles, as well as in his role as policy coordinator of the government's use of the Defense Production Act, Mr. Navarro was on "the President's immediate staff" and/or "in a unit or individual of the Executive Office of the President whose function is to advise or assist the President." 44 U.S.C. § 2201. As such, Mr. Navarro was a Covered Individual.

27. While serving in the White House, Mr. Navarro used at least one non-official email account to send and receive messages that constitute Presidential records. The House Select Subcommittee on the Coronavirus Crisis (the Subcommittee) obtained copies of electronic messages from individuals, other than Mr. Navarro, as part of its investigation into the government's response to the coronavirus pandemic, and those messages reflect that Mr. Navarro used a non-official email account, namely, a ProtonMail account, to send and receive Presidential records. *See* Records Released by Subcommittee (Exhibit 2).

28. Through the Subcommittee's work, NARA became aware of Mr. Navarro's use of a non-official email account to send and receive Presidential records. *See* Letter from Gary M. Stern, General Counsel, NARA, to Navarro, Dec. 16, 2021, at 1 (Stern Letter) (Exhibit 3).

29. NARA's General Counsel wrote a letter to Mr. Navarro. *Id.* The letter was sent to the University of California, Irvine, where Mr. Navarro is a professor emeritus in the Paul Merage School of Business. *See id*; UCI Faculty Profile System, Peter Navarro (available online at https://www.faculty.uci.edu/profile.cfm?faculty_id=2709).

30. In the letter, Mr. Stern explained that NARA had "conducted a search of the White House emails that [it] received at the end of the Trump Administration and ha[d] no record" of Mr.

Navarro forwarding to his official account any emails he received on his ProtonMail account. *Id.* at 1. Mr. Stern noted that, "[t]here are also multiple instances where you sent emails from your personal account to other White House employees but did not copy or forward them to your official account." *Id*.

31. After recounting the White House's reminders to its employees about their obligations under the PRA in the WHCO Memorandum, the letter stated that, "it is necessary that you now provide NARA with any Presidential records that reside on your personal electronic messaging accounts." *Id*. at 2. Mr. Stern closed the letter by offering to work with Mr. Navarro to facilitate the transfer of Presidential records to NARA. *Id*.

32. Mr. Navarro did not respond to the Stern Letter. Declaration of William J. Bosanko, Chief Operating Officer, National Archives and Records Admin., August 3, 2022, ¶ 6 (Bosanko Decl.) (attached as Ex. 4). Nor did he respond to multiple voice messages that Mr. Stern left for him regarding the matter. *Id*.

33. On June 1, 2022, Department of Justice counsel wrote Mr. Navarro a letter, in an effort to secure the return of the Presidential records without litigation. The letter was emailed to Mr. Navarro, and sent to him via Priority Mail, through the U.S. Postal Service, with delivery completed on June 2, 2022.

34. The June 1, 2022, letter states, in relevant part:

> Since determining that you conducted official government business as an advisor to President Trump using a private email account, the National Archives and Records Administration (NARA) has repeatedly requested that you provide all electronic mail messages related to your official duties that you created or received using a private email account. To date, you have declined to provide the records.
>
> The Presidential Records Act, 44 U.S.C. § 2201 et seq., establishes that the United States owns records related to the President's official duties, whether or not the records were created or stored on an official

> government server. The United States is entitled to recover property that belongs to it, including official government records.
>
> We have been authorized to file a civil action against you in United States District Court to pursue claims for the recovery of wrongfully withheld records. We intend to file the action on or about June 21, 2022. But as is our practice in civil actions of this nature, we are willing to give you an opportunity to resolve this matter without litigation by turning the wrongfully withheld records over to NARA prior to June 21.

*See* Letter from Elizabeth J. Shapiro to Peter K. Navarro, June 1, 2022 (attached as Exhibit 5).

35. On June 16, 2022, counsel for Mr. Navarro contacted the Department of Justice to advise that they had just been retained by Mr. Navarro as counsel. Mr. Navarro's counsel represented that they had retained a document review and analysis firm to aid them in evaluating the extent to which Mr. Navarro had PRA records in his possession, custody, or control. Bosanko Decl. ¶ 8.

36. Over the next several weeks, Mr. Navarro's counsel provided periodic updates on the status of their search and analysis process. In order to assist and expedite the search, on July 18, 2022, NARA's General Counsel provided Mr. Navarro's counsel with a list of search terms. NARA requested that Mr. Navarro prioritize the return of any PRA records responsive to those search terms. Bosanko Decl. ¶ 8.

37. By email dated July 22, 2022, Mr. Navarro's counsel represented that their application of the search parameters that NARA provided had generated over 1,700 documents. Thereafter, on July 25, 2022, Mr. Navarro's counsel estimated that, based on their review of these documents, between 200 and 250 of these 1,700 documents were PRA records. Bosanko Decl. ¶ 9.

38. By letter dated July 29, 2022, Mr. Navarro's counsel refused to produce any PRA records to NARA in Mr. Navarro's possession, custody, or control absent a grant of immunity for the act of returning such records. Bosanko Decl. ¶ 9.

### COUNT I

**Mr. Navarro Has Possession, Custody, and/or Control or Presidential Records, Which Belong to the United States, and, Under District of Columbia Law, Including the Law of Replevin, Should Be Recovered and Delivered to the United States**

39. The paragraphs above are incorporated and reasserted as if fully set forth here.

40. Mr. Navarro created and received Presidential records on one or more non-official email and/or electronic messaging accounts, including his ProtonMail account. Mr. Navarro was a Covered Individual, and he created and/or received emails and/or other electronic messages "in the course of conducting activities which relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President." 44 U.S.C. § 2201

41. The Presidential records on Mr. Navarro's non-official email account or accounts are the property of the United States. *Id.* § 2202.

42. Mr. Navarro did not ensure that his official electronic email account included copies of all Presidential records created or received on one or more non-official email accounts. *See id.* § 2209. Mr. Navarro has not otherwise provided the Presidential records on his non-official email account and/or electronic messaging accounts to the United States.

43. Accordingly, Mr. Navarro has unjustly retained property of the United States in the form of Presidential records. *See* Bosanko Decl. ¶¶ 10-13. The monetary value of the documents cannot currently be determined because Defendant is the only one with access to the contents of all of the Presidential records on his non-official email and/or electronic messaging accounts. And

in any event, the primary interest of the United States is in recovering the records and preserving them as required by statute, not in recovering money.[1]

44. Under the law of the District of Columbia, including the law of replevin, any Presidential records retained by Mr. Navarro should be taken from him and delivered to the United States. *See, e.g.,* D.C. Code 16-3702; *Hunt v. DePuy Orthopaedics, Inc.*, 729 F. Supp. 2d 231, 232 (D.D.C. 2010) (explaining that "[r]eplevin is an action "brought to recover personal property to which the plaintiff is entitled, that is alleged to have been wrongfully taken or to be in the possession of and wrongfully detained by the defendant," and "concluding that, under D.C. law, "[t]he essence of [] a replevin action . . . is the wrongful withholding of the property in question") (cleaned up).

## COUNT II

**Mr. Navarro Has Possession, Custody, and/or Control or Presidential Records Which Belong to the United States and, Under Federal Common Law, Should Be Recovered and Provided to the United States, and the United States Should Be Awarded Damages**

45. The paragraphs above are incorporated and reasserted as if fully set forth here.

46. Mr. Navarro was a Covered Individual subject to the requirements of the PRA. 44 U.S.C. § 2201.

47. Mr. Navarro created and received Presidential records on one or more non-official email and/or electronic messaging accounts, including his ProtonMail account. The Presidential records on Mr. Navarro's non-official email accounts and/or electronic messaging accounts are the property of the United States. *Id.* § 2202.

---

[1] Relatedly, the United States cannot estimate the amount of mesne profits and damages, if any, because Defendant is the only one with access to all of the Presidential records on his non-official email and/or electronic message accounts.

48. Mr. Navarro did not ensure that his official email account included copies of all Presidential records created or received on one or more non-official email accounts. *See id.* § 2209. Mr. Navarro has not otherwise provided the Presidential records on his non-official email account and/or electronic messaging accounts to the United States.

49. Accordingly, Mr. Navarro has unjustly retained property of the United States in the form of Presidential records.

50. Under federal common law, any Presidential records retained by Mr. Navarro should be taken from him and delivered to the United States, and the United States should be awarded damages in an amount to be determined at trial.

## REQUEST FOR RELIEF

51. Wherefore, Plaintiff requests that this Court:

(a) issue a writ of replevin authorizing the recovery of any Presidential records in the possession, custody, and/or control of Mr. Navarro;

(b) issue an order requiring Mr. Navarro to cooperate with (i) the official serving and implementing the writ of replevin, or (ii) other similar order, to ensure the return of the Presidential records to the United States;

(c) award damages to the United States as appropriate;

(d) award Plaintiff costs and reasonable attorneys' fees incurred in this action; and

(e) award other relief as the Court deems just.

Dated: August 3, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIAN D. NETTER
Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director
Federal Programs Branch


  /s/ *Lee Reeves*
LEE REEVES
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Tel: (202) 616-0773
Email: lee.reeves2@usdoj.gov
*Counsel for Plaintiff*