# Exhibit 4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

*Plaintiff*,

–v.–

PETER K. NAVARRO,

*Defendant.*

Case No. 1:22-cv-_____

# DECLARATION OF WILLIAM J. BOSANKO

I, William J. Bosanko, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me in the course of my employment, hereby make the following declaration with respect to the above-captioned matter:

1. I am currently the Chief Operating Officer at the National Archives and Records Administration (NARA). I have held this position since January 1, 2013.

2. In this position, I oversee the NARA program office that assumes "responsibility for the custody, control, and preservation," 44 U.S.C. § 2203, of Presidential records at the end of each Presidential Administration.

3. Presidential records are the property of the United States, as established by the Presidential Records Act of 1978, as amended, 44 U.S.C. § 2202.

4. In December 2021, NARA became aware of Peter K. Navarro's use of a non-official email account, provided by ProtonMail, to send and receive Presidential records during his tenure as presidential advisor.

1

5. In December 2021, NARA conducted a search of the White House emails that it had received at the end of the Trump Administration and had no record of Mr. Navarro forwarding to his official government email account the emails that he had sent or received on his ProtonMail account.

6. On December 16, 2021, NARA's General Counsel, Gary M. Stern, wrote a letter to Mr. Navarro requesting that he turn over to NARA any Presidential records that remain in his custody. Mr. Stern also telephoned Mr. Navarro and left several voice messages regarding the same request. Mr. Navarro did not respond to the letter or phone calls.

7. After unsuccessfully attempting to obtain Mr. Navarro's cooperation in returning the Presidential records, NARA referred the matter to the Department of Justice (DOJ). On June 1, 2022, DOJ counsel wrote Mr. Navarro a letter in an effort to secure the return of the Presidential records without litigation. The letter advised that DOJ was authorized to file suit to obtain the Presidential records, but was willing to work with Mr. Navarro to transfer the Presidential records to NARA voluntarily.

8. On June 16, 2022, counsel for Mr. Navarro contacted DOJ to advise that they had recently been retained by Mr. Navarro as counsel and that they had hired a document review and analysis firm to aid them in evaluating the extent to which Mr. Navarro had Presidential records in his possession, custody, or control. On June 17, 2022, DOJ put counsel for Mr. Navarro in touch with Mr. Stern to discuss the return of Presidential records held by Mr. Navarro. Over the next several weeks, Mr. Navarro's counsel provided periodic updates on the status of their search and analysis process. To assist and expedite this process, on July 18, 2022, Mr. Stern provided Mr. Navarro's counsel with a list of initial search terms. NARA requested that Mr. Navarro prioritize the return of any Presidential records responsive to these search terms.

9. By email dated July 22, 2022, Mr. Navarro's counsel represented that their application of the search parameters provided by NARA had generated over 1,700 documents. On July 25, 2022, Mr. Navarro's counsel estimated that, based on their review of these documents, between 200 and 250 of these 1,700 documents were Presidential records. By letter dated July 29, 2022, addressed to Mr. Stern, Mr. Navarro's counsel stated that, "in advance of any production of materials responsive to your request, we ask that the Department of Justice provide Mr. Navarro with act-of-production immunity with respect to any such production." (Letter of John Irving to Gary M. Stern, attached as Att. A.)

10. To date, Mr. Navarro has not turned over to NARA any Presidential records.

11. According to the affiant's information and belief, the Plaintiff is entitled to recover possession of chattels proposed to be replevied, being the same described in the complaint.

12. The Defendant has seized and detained or detains the chattels.

13. The chattels were not subject to the seizure or detention and were not taken upon a writ of replevin between the parties.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 3, 2022        Signature: _____
                                              WILLIAM J. BOSANKO

# Attachment A



**John S. Irving**
E&W Law
1455 Pennsylvania Ave., N.W., Suite 400
Washington, D.C. 20004
301-807-55670
John.Irving@earthandwatergroup.com

July 29, 2022

Gary M. Stern, Esq.
General Counsel
National Archives and Records Administration
8601 Adelphi Road
College Park, Maryland 20740-6001
Via Email: garym.stern@nara.gov

  Re: Peter K. Navarro

Dear Mr. Stern:

As discussed on Monday, July 25, we have been actively working to identify records within Mr. Navarro's possession, custody, and/or control that are potentially responsive to NARA's request. As you know, this effort has already involved a substantial investment of time and resources. Specifically, we have now completed the process of creating a forensic image of Mr. Navarro's cell phones and have also completed an extraction of records from Mr. Navarro's personal Protonmail account, all of which we will continue to preserve consistent with our ethical obligations.

During this process, the occurrence of several events causes us to question whether Mr. Navarro's procedural due process rights may be at risk of infringement. As you are aware, Mr. Navarro was first contacted by NARA on or about December 16, 2021, concerning your belief that Mr. Navarro may be in possession, custody, or control of records the subject of the Presidential Records Act, 44 U.S.C. § 2201 *et seq*.

In the meantime, as you are no doubt aware, Mr. Navarro has now been indicted for allegedly having failed to comply with a subpoena issued by the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol. Mr. Navarro's response to that subpoena was informed by his interaction with the U.S. House Select Subcommittee on the Coronavirus Crisis, which apparently accepted Mr. Navarro's assertion of executive privilege in that he received no response to his last correspondence with the Subcommittee on December 14, 2021, in which he advised he could not comply with the subpoena due to his obligation to invoke executive privilege.

Several circumstances appear unlikely to be coincidental and give us concern about coordination between various government investigations and the protection of Mr. Navarro's constitutional rights. To start, NARA's initial letter to Mr. Navarro on December 16, 2021, came just one day after the return date for the Coronavirus Select Subcommittee's subpoena for records. We now believe NARA's initial request was precipitated by that Select Subcommittee. Then, on June 1, 2022, just one day prior to the return of the Department's indictment and after more than six months of inaction, Mr. Navarro received correspondence from Elizabeth Shapiro, Deputy

Page 2

Director of DOJ's Civil Division Federal Programs Branch, informing him of the Department's intent to file suit "for the recovery of wrongfully withheld documents."

Thereafter, on June 26, 2022, Mr. Navarro, though counsel, wrote the Department to request all discoverable materials in his criminal action pursuant to Rule 16 of the Federal Rules of Criminal Procedure and *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. Among other things, Mr. Navarro requested any communications as between the Department and the Coronavirus Select Subcommittee advising that all such communications were both exculpatory and material to Mr. Navarro's defense in that they support his understanding that executive privilege precluded his compliance with the subpoenas of both the Coronavirus Select Subcommittee and the January 6th Select Committee. Then, *later that day*, the Coronavirus Select Subcommittee renewed its demand that Mr. Navarro comply with its subpoena – the first contact that Mr. Navarro (or his counsel) had had with the Subcommittee since a letter Mr. Navarro sent to the Subcommittee on December 14, 2021. Further exacerbating our concerns is the fact that the Coronavirus Subcommittee's request was that Mr. Navarro comply with *NARA's* request that Mr. Navarro provide any records in his possession, custody, or control covered by the PRA. In combination, any suggestion that this series of events is merely coincidental defies reason.

Put simply, we are concerned that the government is using the Presidential Records Act as a discovery tool, not only with respect to Mr. Navarro's ongoing criminal case, but with respect to broader investigations being conducted by both Congress and the Executive Branch. While we acknowledge Mr. Navarro's obligations under the Presidential Records Act we also must acknowledge the conflict as between the Act and his rights under the Constitution, including the Fifth Amendment.

As you may be aware, the Supreme Court has recognized that the act of producing materials in response to a subpoena or other request implicates an individual's privilege against being compelled to incriminate themselves through testimony. *See Fisher v. United States*, 425 U.S. 391, 410-11 (1976). The so-called "act of production privilege" thus precludes the government from compelling the production of records which, by implication both acknowledges "the existence of the papers demanded and their possession or control." *Id.* Moreover, Mr. Navarro is not a custodian of any responsive records such that his production of the same could not be used against him in a criminal proceeding. *See United States v. Dean*, 989 F.2d 1205, 1208-11 (D.C. 1993).

Accordingly, in advance of any production of materials responsive to your request, we ask that the Department of Justice provide Mr. Navarro with act-of-production immunity with respect to any such production. We reiterate our willingness to work with you to ensure Mr. Navarro's compliance with the Presidential Records Act, and we appreciate your prior assistance in providing search parameters to better target relevant information. We also against confirm that we have forensically preserved Mr. Navarro's records, and they will be available for production when we receive assurances from the government that any such production does not infringe on his fundamental Constitutional procedural rights.

Page 3

                        Very truly yours,

                        E&W Law

                        By: */s/ John S. Irving*
                               John S. Irving

cc:

Justin Sandberg, Esq.
U.S. Department of Justice
Federal Programs Branch, Civil Division
Washington, D.C. 20530
Via Email: justin.sandberg@usdoj.gov

Lee Reeves, Esq.
U.S. Department of Justice
Federal Programs Branch, Civil Division
Washington, D.C. 20530
Via Email: lee.reeves2@usdoj.gov

John P. Rowley III, Esq.
SECIL Law
Via Email: jrowley@secillaw.com