**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA,**

**v.**

**PETER K. NAVARRO,**

**Defendant.**

**Case No. 1:22-cv-02292-CKK**

## MOTION TO DISMISS

Dr. Peter K. Navarro, by and through the undersigned counsel, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby respectfully requests this Court dismiss the above-captioned action

### I. FACTUAL BACKGROUND

Dr. Navarro was one of the longest-tenured members of Donald Trump's Presidential Administration, serving from January 20, 2017, through January 20, 2021, as the Director of the National Trade Council and as the Director of the Office of Trade and Manufacturing Policy, as well as Assistant to the President and the national Defense Production Act Policy coordinator in furtherance of the United States' response to the coronavirus pandemic. In these positions, Dr. Navarro was responsible for coordinating the day-to-day actions of multiple Executive Branch functions, and for corresponding with the President and other high-level Executive Branch employees.

On November 18, 2021, the U.S. House of Representatives' Select Subcommittee on the Coronavirus Crisis subpoenaed Dr. Navarro for testimony and records related to his official duties with the Trump administration. Ultimately, that subcommittee rejected Dr. Navarro's assertion of executive privilege and testimonial immunity and, on December 11, 2021, the

subcommittee's Chairman, Representative James E. Clyburn, wrote Dr. Navarro reiterating the subcommittee's demand for certain records it believed to be within Dr. Navarro's possession, custody, and/or control: "As explained in my September 14, 2021 letter to you, records previously obtained by the Select Subcommittee indicate that you used a private, encrypted email communications system called ProtonMail to conduct official business while working at the White House." Days later, on December 16, 2021, a representative for the National Archives and Records Administration ("NARA") surreptitiously informed Dr. Navarro of NARA's belief that Dr. Navarro was in possession, custody, or control of documents subject to the Presidential Record Act of 1978, 44 U.S.C. §§ 2201-2209.

In the meantime, on February 24, 2022, Dr. Navarro was also subpoenaed by the U.S. House of Representatives Select Committee to Investigate the January 6th Attack on the United States Capitol ("Select Committee") for testimony and records. As with the subcommittee, Dr. Navarro ultimately asserted executive privilege and testimonial immunity with the select committee, which, on March 28, 2022, led to his referral to the Department of Justice for contempt of congress. Dr. Navarro was thereafter indicted on June 2, 2022. Contemporaneously, on June 1, 2022, an attorney with the Department of Justice's Civil Division Federal Programs Branch contacted Dr. Navarro and informed him that the DOJ was authorized to file suit for "the recovery of wrongfully withheld documents" under the Presidential Records Act.

The timing of these events led Dr. Navarro to reasonably believe that the Executive and Legislative Branches were coordinating their efforts so as to ultimately affect Dr. Navarro's penal interest. Dr. Navarro outlined his concerns in correspondence to Gary Stern, General Counsel for NARA, on July 29, 2022. Specifically, Dr. Navarro advised of his request for

immunity based upon an assertion of the "act of production privilege," which protects the interests of an individual in providing materials in response to a subpoena that may affect the individual's right against self-incrimination. In response, the United States filed the instant action. Thus, while the United States' Complaint would suggest that this action concerns a straightforward request for the "return of Presidential records," it is in fact far more complex.

## II. STATUTORY BACKGROUND

The Presidential Records Act ("PRA") of 1978, 44 U.S.C. §§ 2201-2209, was enacted to officially vest ownership of the President's records to the public, and set forth the requirement of presidential administrations to maintain and preserve certain presidential and vice-presidential information during and after a presidency. The PRA defines the term *presidential records* as:

> documentary materials, or any reasonably segregable portion thereof, created or received by the President, the President's immediate staff, or a unit or individual of the Executive Office of the President whose function is to advise or assist the President, in the course of conducting activities which relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President. Such term— (A) includes any documentary materials relating to the political activities of the President or members of the President's staff, but only if such activities relate to or have a direct effect upon the carrying out of constitutional, statutory, or other official or ceremonial duties of the President.

44 U.S.C. § 2201(3)(A).

During an incumbent President's term in office, the PRA provides exclusive responsibility for custody, control, and access to presidential records to that president, while providing the Archivist of the United States ("Archivist") with the right to maintain and preserve these presidential records on behalf of the President. *Id.* at § 2203(f). Once the incumbent President's term ends, the Archivist, "assume[s] responsibility for the custody, control, and preservation of, and access to, the Presidential records of that President." *Id.* at (g)(1). However, despite strict requirements for maintenance and preservation of presidential records, the PRA is

entirely silent as to any deadline by which presidential records must be provided to the Archivist; the PRA only provides a timetable for when the Archivist becomes responsible for presidential records of a former President.

The PRA also acknowledges the necessity of presidential records being sent in electronic message form and from non-official email accounts. 44 U.S.C. §§ 2201, 2209. If presidential records are sent with a non-official account, the President, the Vice President, and Covered Employees are to, "cop[y] an official electronic messaging account of the President, Vice President, or covered employee in the original creation or transmission of the Presidential record or Vice Presidential record[,]" or "forward[] a complete copy of the Presidential or Vice Presidential record to an official electronic messaging account of the President, Vice President, or covered employee not later than 20 days after the original creation or transmission of the Presidential or Vice Presidential record." *Id.* at § 2209(a)(1), (2). This section of the PRA provides that any intentional violation the subsection outlining the use of non-official email accounts may be the basis of a disciplinary action pursuant to 5 U.S.C. 7501 *et seq*. The PRA otherwise does not address the consequence of an alleged violation of the Act through the use of non-official email.

## III. LEGAL STANDARD

Dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is "appropriate when a complaint fails 'to state a claim upon which relief can be granted.'" *Strumsky v. Wash. Post Co.*, 842 F. Supp. 2d 215, 217 (D.D.C. 2012) (quoting Fed. R. Civ. P. 12(b)(6)). "[A] complaint must contain sufficient factual allegations that, if accepted as true, 'state a claim to relief that is plausible on its face.'" *United States ex rel. Scott v. Pac. Architects & Eng'rs, Inc.*, 270 F. Supp. 3d 146, 152 (D.D.C. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Though the Court, "must liberally construe the complaint in favor of the plaintiff and must grant the plaintiff 'the benefit of all inferences that can be derived from the facts alleged,' . . . a court need not 'accept as true a legal conclusion couched as a factual allegation.'" *Chatman v. U.S. Dep't of Def.*, 270 F. Supp. 3d 184, 188 (D.D.C. 2017) (quoting *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 529, 530 (D.C. Cir. 2015)).

## IV. ARGUMENT

The United States asserts that the PRA requires any presidential records within Dr. Navarro's possession, custody, or control to be provided to the Archivist immediately upon the conclusion of an incumbent president's administration. *See* Complaint, ¶ 23. However, this is a clear mischaracterization of the language of the PRA, which provides that that, "the Archivist of the United States shall assume responsibility for. . . the Presidential records of that President." 44 U.S.C. § 2203(g)(1) (emphasis added). This distinction is important, as the United States bases the entirety of its complaint upon a nonexistent deadline. The PRA merely puts the onus on the Archivist to account for the maintenance and custody of presidential records of former presidents. While the PRA may authorize the Archivist to seek records once a presidential administration has concluded, it provides the Archivist with neither with a hard deadline by which to do so nor an enforcement mechanism by which to do so. *See* Maggie Haberman and Michael S. Schmidt, How Trump Deflected Demands for Documents, Enmeshing Aides, *The New York Times* (Oct. 8, 2022)[1] ("In a conversation in late October or early November of last

[1] *Available at* https://www.nytimes.com/2022/10/08/us/politics/trump-documents-lawyers.html. *See also [insert]*

year, Mr. Stern [General Counsel of the National Archives and Records Administration] . . . acknowledged that the Presidential Records Act did not contain an enforcement mechanism . . . .").

Here, Dr. Navarro has asserted a privilege validly delaying the time within which he must produce the records sought by the Archivist. The Supreme Court has recognized that the act of producing materials in response to a subpoena or other request implicates an individual's privilege against being compelled to incriminate themselves through testimony, and as such a so-called act-of-production immunity exists. *See Fisher v. United States*, 425 U.S. 391, 410-11 (1976). This immunity is based upon an individual's right against self-incrimination enshrined in the Fifth Amendment, and it precludes the government from compelling the production of records which, by implication both acknowledges "the existence of the papers demanded and their possession or control." *Id. See also In re Grand Jury Subpoena Duces Tecum*, 670 F. 3d 1335, 1339-40 (11th Cir. 2012) (absent a grant of full use and derivative immunity, the government cannot compel a subject to decrypt his computer hard drives when decryption itself would be testimonial). Moreover, Dr. Navarro is not a custodian of any responsive records such that his production of the same could not be used against him in a criminal proceeding. *See United States v. Dean*, 989 F.2d 1205, 1208-11 (D.C. Cir. 1993).

Absent any requirement within the PRA for presidential records to be produced by a date certain, and given the Dr. Navarro's important interest in protecting his rights under the Fifth Amendment, the United States fails to provide a sufficient justification for this Court to invade Dr. Navarro's constitutionally protected rights and force the production of any records within Dr. Navarro's possession, custody, or control.

Moreover, the United States' claims of replevin fail to state a claim upon which relief can be granted. Of note, the PRA only places responsibility for the management of such records upon the President. See 44 U.S.C. § 2203(a) ("*the President shall* take all such steps as may be necessary to assure that the activities, deliberations, decisions, and policies that reflect the performance of the President's constitutional, statutory, or other official or ceremonial duties are adequately documented and that such records are preserved and maintained as Presidential records pursuant to the requirements of this section and other provisions of law." (emphasis added)).

The only affirmative duty placed upon any employee of the President can be found in 44 U.S.C. § 2209, which requires covered employees to either copy an official email of the President, Vice President, or covered employee on the original "creation or transmission" of the record, or to forward such copy to an official email within 20 days after the creation of the record, but only provides that any failure to do so as a basis for an adverse employment action while employed in that government position. *Id.* at (a)(1)-(2), (b). The United States, however, seeks to use the Act's very limited applicability to impose on Dr. Navarro duties that exceed the scope of the Act. Compl. ¶ 48.

Congress purposely did not create an enforcement mechanism for the PRA. *See Citizens for Responsibility & Ethics in Wash. v. Trump*, 302 F. Supp. 3d 127, 129-30 (D.D.C. 2018) (interpreting Congress's refusal to include an enforcement provision in the PRA and refusal to create a private right of action as a deliberate decision meant to reflect the "legislative balancing" between ensuring that presidential records, "are preserved so that the public would have access to them after the President leaves office[,]" while also, "minimiz[ing] outside interference with the day-to-day operations of the President and his closest advisors and to ensure executive

branch control over presidential records during the President's term in office." The Court notes that Congress deliberately "chose not to create a private right of action to enforce [PRA]."); *see also Armstrong v. Bush*, 924 F.2d 289, 290 (D.C. Cir. 1991) (acknowledging Congress's purposeful decision to not include an enforcement mechanism in PRA).

Confronted with the lack of an enforcement mechanism within the statutory framework of the PRA, the United States here seeks to force a production of records by Dr. Navarro through an action in replevin. Generally, replevin is an action bought for, "recovery of possession of wrongfully taken property and damages incidental to detention." *See Ellipso, Inc. v. Mann*, 541 F. Supp. 2d 365, 376 n. 5 (D.D.C. 2008) (citing *Wardman-Justice Motors v. Petrie*, 39 F.2d 512, 515 (D.C. Cir. 1930). *See also Replevin*, BLACK'S LAW DICTIONARY, 2ND ED. ("A personal action ex delicto brought to recover possession of goods unlawfully taken, (generally, but not only, applicable to the taking of goods distrained for rent,) the validity of which taking it is the mode of contesting, if the party from whom the goods were taken wishes to have them back in specie, whereas, if he prefer to have damages instead, the validity may be contested by action of trespass or unlawful distress. The word means a redelivery to the owner of the pledge or thing taken in distress.").

Courts in this Circuit considering a claim of replevin under the D.C. Code look to D.C. law, rather than any federal common law, to determine whether a party has stated a viable replevin claim. *BMO Harris Bank N.A. v. Dist. Logistics*, LLC, 2021 U.S. Dist. LEXIS 255094 at *7 (D.D.C. Jul. 23, 2021). In the District of Columbia, replevin is a cause of action, "brought to recover personal property to which the plaintiff is entitled, that is alleged to have been wrongfully taken by or to be in the possession of and wrongfully detained by the defendant[.] *BMO*, 2021 U.S. Dist. LEXIS 255094 at *7-8 (quoting *Hunt v. DePuy Orthopaedics, Inc.*, 729 F.

Supp. 2d 231, 232 (D.D.C. 2010) (citing D.C. Code § 16-3701))). The D.C. Code however, has very specific pleading requirements and § 16-3702 provides that claim for replevin must state that:

> The plaintiff sues the defendant for (wrongly taking and detaining) (unjustly detaining) the plaintiff's goods and chattels, to wit: (describe them) *of the value of [specified amount of] dollars*. And the plaintiff claims that the same be taken from the defendant and delivered to him; or, if they are eloigned, *that he may have judgment of their value and all mesne profits and damages, which he estimates at [specified amount of] dollars, besides costs*.

D.C. Code § 16-3702 (emphasis added).

The United States first attempts to avoid the requirement of D.C. Code § 16-3702 by asserting, "[t]he monetary value of the documents cannot currently be determined because Defendant is the only one with access to the contents of all of the Presidential records on his non-official email and/or electronic messaging accounts." Compl. ¶ 43. Further, the United States contends that, "the United States cannot estimate the amount of mesne profits and damages, if any, because Defendant is the only one with access to all of the Presidential records on his nonofficial email and/or electronic message accounts." *Id.* at ¶ 43, n. 1. Put differently, the United States concedes that the alleged presidential records at issue do not have a monetary value calculable on their own. Courts in this Circuit have strictly construed the requirements in D.C. Code §§ 16-3702 through 16-3704. *See BMO*, 2021 U.S. Dist. LEXIS 255094 at *7-9 (dismissing an otherwise successful replevin action for failure to strictly adhere to the requirements of D.C. Code §§ 16-3702 through 16-3704 when seeking a writ of replevin).

In addition, while no Court has addressed whether an email is "personal property" under the D.C. statute, Courts in this circuit have interpreted "personal property" to include intangible rights. *See Ficken v. AMR Corp.*, 578 F. Supp. 2d 134, 143 (D.D.C. 2008) (denying a replevin claim to recover frequent flyer miles from an airline, because such miles were an intangible right

and thus were not "personal property"). To that end, the United States does not allege that Dr. Navarro has seized and detained the records in question: rather, the Complaint alleges that Dr. Navarro was the proper recipient or creator of these records at the time they were created, and now that the United States has identified them as being emails which Dr. Navarro must turned over, Dr. Navarro has begun to audit his email account to return such documents. This distinction further demonstrates the inapplicability of replevin as a cause of action. Based on the information contained herein, the Complaint should be dismissed.

Finally, the United States pleads in the alternative some vague federal common law action of replevin that purportedly requires the return of the alleged emails that are the property of the United States. See Compl. ¶¶ 39-51. But the United States does not provide for any specific federal common law it contends applies to Dr. Navarro, and thus its claim must be dismissed as baseless legal conclusions masquerading as factual allegations.

**CONCLUSION**

For the foregoing reasons, Dr. Navarro respectfully requests this Court dismiss the instant Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

[SIGNATURE ON NEXT PAGE]

Dated: October 11, 2022

Respectfully submitted,

*/s/ Stanley E. Woodward, Jr.*

Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD LAW, LP
1808 Park Road NW
Washington, DC 20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel for Defendant Peter K. Navarro*

**CERTIFICATE OF SERVICE**

On October 11, 2022, the undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed and served via the CM/ECF system, which will automatically send electronic notification of such filing to all registered parties.

*/s/ Stanley E. Woodward, Jr.*

Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD LAW, LP
1808 Park Road, Northwest
Washington, DC 20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com