**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | **Case No. 1:22-cv-02292-CKK** |
| **v.** ) | |
| ) | |
| **PETER K. NAVARRO,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**DEFENDANT PETER K. NAVARRO'S OPPOSITION TO THE UNITED STATES'**
**MOTION FOR SUMMARY JUDGMENT**

The narrow question before the Court is whether the Presidential Records Act ("PRA"),

44 U.S.C. §§ 2201-2209, provides the United States with any vehicle by which to compel the

provision of records it concludes are subject to the Act.  The Act, however, provides no such

vehicle because Congress did not intend for the United States to utilize the PRA as a weapon as

against those persons who become political opponents of the current administration by virtue of

their past service.  In this case, Dr. Navarro was one of the longest-tenured members of Donald

Trump's Presidential Administration, serving from January 20, 2017, through January 20, 2021,

as the Director of the National Trade Council and as the Director of the office of Trade and

Manufacturing Policy coordinator in furtherance of the United States' response to the

coronavirus pandemic.  Now, the current administration has weaponized the PRA by seeking to

compel his production of records that the United States knows would inculpate him with respect

to accusations of willful noncompliance with congressional subpoenas concerning those same

records.

I.        **FACTUAL BACKGROUND**

The United States provided a list of facts and presented them as, "not in dispute."  *See*

Defendant's [sic] of Material Facts Not in Dispute, ECF No. 7-2.[1]  The facts propounded by the

United States, however, are immaterial to the United States' proffered causes of action.  Rather,

the United States' "undisputed" facts present a record that establishes that Dr. Navarro held

numerous positions in Donald Trump's White House; was subject to the Presidential Records

Act ("PRA"), 44 U.S.C. §§ 2201-2209, to some extent; may or may not currently possess

documents that are subject to the PRA; and has taken efforts to engage in an audit of his email to

determine if he is actually in possession of "Presidential records" as defined under PRA and

provided the United States with frequent updates of the audit process.

The United States also misrepresents the nature of Dr. Navarro's final correspondence

before the commencement of this action.  The United States has portrayed Dr. Navarro's actions

as the purposeful withholding of documents that belong to the United States in exchange for a

grant of immunity. *See* Plaintiff's Memorandum in Support of Motion for Summary Judgment,

ECF No. 7-1, at 7.  However, Dr. Navarro's correspondence with the United States clearly does

not communicate this.  In contrast, on July 29, 2022, Dr. Navarro, through counsel, informed the

United States that the audit for any presidential records that may be in Dr. Navarro's possession

was still ongoing.  In addition, Dr. Navarro advised that because of the act-of-production

privilege, the production of any such records could inculpate Dr. Navarro in related criminal

proceedings.  Indeed, at the time of this representation, Dr. Navarro had been indicted for

contempt of congress because he allegedly failed to properly respond to a congressional

---

[1] As a threshold matter, although likely an honest mistake, the United States submitted their
statement of material facts but attributed them to "Defendant."

subpoena.  In addition, Dr. Navarro potentially remained the subject of investigation by the House of Representatives Select Subcommittee to Investigate the Coronavirus Crisis ("the Subcommittee").  Therefore, Dr. Navarro reasonably believed the production of records to the United States risked the implication of his Fifth Amendment right against self-incrimination. The reasonableness of this concern is evidenced by the United States' own admission that this action resulted from disclosures made by the Subcommittee as to the supposed existence of Presidential records allegedly contained on Dr. Navarro's personal email.  July 29, 2022 Correspondence attached as Exhibit A.  See also ECF No. 7-1, at 5 ("Through the Subcommittee's work, NARA became aware of Dr. Navarro's [alleged] use of a non-official email account to send and receive emails in the course of conducting official business").

The United States seeks to assert that the PRA creates such an obvious distinction as to what entails presidential records that should be turned over to the Archivist of the National Archives and Records Administration ("the Archivist") and that Dr. Navarro pursuing an audit that lasts longer than roughly a month is unreasonable.  Such an assertion is simply inaccurate because the statute's definitions are vague and expansive, and require more than simply searching through and finding a few terms.[2]

Further, the United States provided its own search terms to Dr. Navarro in an effort to streamline the audit.  Dr. Navarro included these terms in a subsequent search and did reveal the potential existence of some Presidential records; but now the United States seeks to claim that

---

[2] See 44 U.S.C. 2201(1)-(3) (providing definitions of terms "documentary material," "Presidential records" and "personal records").  The only "documentary materials" that must be turned over to the Archivist are "Presidential records," but even documents that may otherwise be related to the official duties of Presidential staff need not be produced to the Archivist if they are political activities that do not relate to the carrying out of the President's constitutional, statutory, or other official or ceremonial duties.  Further, personal records need not be turned over and are defined as "documentary materials, or any reasonably segregable portion thereof, of a purely private or nonpublic character which do not relate to or have an effect upon the carrying out of the constitutional, statutory, or other official ceremonial duties of the President."

the search run with their specific terms was based on "underinclusive search terms." ECF 7-1, at

8. Effectively, the United States knew that such an audit would take a long time to make

determinations as to whether materials actually were presidential records subject to PRA, and

when the audit was not complete within two months the United States filed an unnecessary,

rushed, and baseless complaint.

## II.    LEGAL STANDARD

The court may grant summary judgment where, "the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(c); *see also Moore v. Hartman*, 571 F.3d 62, 66, 387 U.S. App. D.C. 62 (D.C. Cir. 2009). A

court considering a motion for summary judgment must draw all, "justifiable inferences" from

the evidence in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106

S. Ct. 2505, 91 L. Ed. 2d 202 (1986). To defeat a motion for summary judgment, the nonmovant

must provide, "specific facts showing that there is a genuine issue for trial." *Matsushita Elec.

Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538

(1986).

## III.    ARGUMENT

### a.    The Statute Does Not Make Dr. Navarro Responsible for the Management and Custody of Presidential Records, Nor Does it Set a Hard Deadline for When Any Presidential Records Must Be Turned Over

As a threshold matter, the PRA's section on the management and custody of Presidential

records primarily applies to only the President and to the Archivist. *See* 44 U.S.C. § 2203(a), (f),

(g). The only portion of this section that theoretically may apply to Dr. Navarro states that any

documentary materials an employee produces or receives shall be categorized as Presidential

records or personal records upon their creation or receipt and be filed separately.  *Id.* at (b).

However, it is still the President that must implement the records management controls, meaning

that Dr. Navarro's statutory duties under this section are basically nonexistent. *Id.* at (a)-(b).

Similarly, the United States' provides no support for its theory that the PRA has any hard

deadline by which records are to be provided to the Archivist.  *See* ECF 7-1, at 3 (citing 44

U.S.C. § 2203 for the proposition that, "Presidential records. . . are required to be turned over to

NARA no later than the end of the administration").  The PRA, however, plainly provides no

such deadline:  instead, the relevant section states only that once a President leaves office, "the

Archivist of the United States shall assume responsibility for the custody, control, and

preservation of, and access to, the Presidential records of that President [and] [t]he Archivist

shall have an affirmative duty to make such records available to the public as rapidly and

completely as possible consistent with the provisions of this chapter."  44 U.S.C. § 2203(g)(1).

Therefore, any assertion that Dr. Navarro has missed some deadline to turn over documents that

makes his current alleged possession of Presidential records as "wrongful withholding" is

incorrect.  As was stated in his Motion to Dismiss, Dr. Navarro remains adamant that he will turn

over any Presidential records in his possession once the audit is complete and any risk that such a

production serves to incriminate him has been alleviated.

###    b.  The Statute is Ambiguous, and Most of the Statutory Sections in the PRA Have Not Been Interpreted by a Court

The United States relies almost exclusively on its own interpretation of the applicability

of 44 U.S.C. § 2209, a section of the PRA that no court has ever cited, let alone interpreted.  The

section at issue states the following:

> Disclosure requirement for official business conducted using non-official electronic
> messaging accounts. (a) In General.- The President, the Vice President, or a covered

employee[3] may not create or send a Presidential or Vice Presidential record using a non-official electronic message account unless the President, Vice President, or covered employee- (1) copies an official electronic messaging account of the President, Vice President, or covered employee in the original creation or transmission of the Presidential record or Vice Presidential record; or (2) forwards a complete copy of the Presidential or Vice Presidential record to an official electronic messaging account of the President, Vice President, or covered employee not later than 20 days after the original creation or transmission of the Presidential or Vice Presidential record.

2209(a)(1)-(2).  It must be noted that this section only provides that, for *intentional* violations of subsection (a) of 2209 by a covered employee, the only action that may result is a disciplinary action in accordance with subchapter I, II, or V of Chapter 75 of Title 5.  *See id.* at (b).

The United States' reliance on this subsection is problematic for two reasons: first, the United States seeks to assert that this section would have affirmatively required that Dr. Navarro must forward documents he *received* on his personal email from others.  However, the statute in this section only states that the reporting requirements of subsections (a)(1) or (a)(2) must happen if the covered employee uses a non-official electronic message account to "create or send" Presidential records.  The United States has provided no evidence to demonstrate that "create or send" also means "receive", and Section 2201(2) defines Presidential records to include documentary materials "created or received," Congress's choice to not include the term "receive" in Section 2209 at the very least casts ambiguity on whether it applies to when an email is received.  This distinction is important, because the United States alleges that some of his alleged violations of PRA are the receipt of emails on a personal email.  ECF 1 Exhibit 2, at pp. 4-11, 20.

Second, the applicability of section 2209 is unclear, as the section was only added with in 2014 and it has yet to be interpreted by the Courts.  Further, the only reference to any

---

[3] Dr. Navarro concedes that, based on the definitions contained in this section, he is a covered employee subject to this section.  See 2209(c)(1)(A)-(D).

consequence for violating this section is that it may be used as a basis for disciplinary action.  If

Dr. Navarro did violate section 2209, it was not intentional, and the United States has produced

no evidence to suggest otherwise.  Further, even if it was intentional Dr. Navarro argues that the

only purpose for which 2209 can be used is as a basis for discipline of covered federal

employees who intentionally fail to follow Section 2209(a)(1)-(2), and Dr. Navarro is no longer a

United States employee so he may not be subject to discipline at this time.

Because Section 2209 is entirely vague as to its applicability to emails which were

*received* on a personal email account, and as to whether a violation of 2209(a) is intended as

anything beyond a basis for disciplinary action, there exist genuine disputes of material fact as to

whether any alleged actions Dr. Navarro engaged in were even a violation of PRA.

### c.   Replevin is Not the Proper Action

The United States asserts, again without citing substantive case law, that the action of

replevin is clearly the appropriate method for returning the supposed "wrongfully withheld"

presidential records.  Setting aside the obvious observation that Congress itself did not include

any vehicle by which the United States could seek the return of such records, nearly every single

case cited by the United States is either distinguishable from this action or poses more questions

than it answers.

The United States cites dicta from *Hunt v. DePut Orthopaedics, Inc.*, 729 F. Supp. 2d 231

(D.D.C. 2010), which ultimately held that the property at issue had been abandoned, and thus

could not be subject to wrongful withholding required for a replevin action.  Similarly the United

States cites dicta from *United States v. Zook*[4] and *United States v. McElvenny,* for the proposition

that replevin is an appropriate action under these facts and circumstances.  In *McElvenny*, 2003

---

[4] Multiple searches for *United States v. Zook* and the attached case number turned up completely unrelated actions, and the United States did not cite to a year as to which this action occurred.

U.S. Dist. LEXIS 4792 (S.D.N.Y. Mar. 31, 2003), however, the United States sued a private collector for a map previously owned by President John F. Kennedy.  The court in *McElvenny* did not analyze replevin or find that it was an appropriate action, and instead denied a motion to dismiss the action on the basis that President Kennedy's deed was a valid instrument and clearly demonstrated President Kennedy's intent to provide the map as a gift to the United States United States.  *McElvenny*, 2003 U.S. Dist. LEXIS 4792, at * 11-12.  Once again, the analytical value of this case as non-binding dicta that fails to provide any insight into a replevin action is minimal.

The United States' motion for summary judgment is analytically incomplete as to why a replevin action is an appropriate way for the United States to seek emails that may or may not exist: even if the United States could prove that Dr. Navarro was willfully withholding United States property, the cause of action of replevin requires very specific mechanisms which the United States frankly fails to address or readily admits it does not meet.  As stated throughout this process, any Presidential records that may be in Dr. Navarro's possession are retained as a result of an innocent oversight and therefore not willful, and as soon as any Presidential records are identified and the risk of incrimination is passed, Dr. Navarro will happily turn these documents over to the Archivist.

Further, as discussed in Dr. Navarro's Motion to Dismiss the Complaint, while the D.C. Courts have distinguished that replevin applies to personal property, the United States has provided no case law to suggest that emails are personal property that would subject them to a replevin action.  Further, there is case law that suggests that personal property is more complicated than "anything that is not real property."  *See Ficken v. AMR Corp.*, 578 F. Supp. 2d 134, 143 (D.D.C. 2008) (denying a replevin claim for frequent flyer miles from an airline, because an intangible right was not "personal property").  Without precedent to support the

proposition, the United States asserts that the only distinction that matters in a replevin action is that if an item is not real property, then it is personal property and can be recovered via replevin. ECF 007-1, at 9 n. 4. Yet, the United States also readily admits that the emails sought do not have the underlying monetary value or mesne profits or damages, and that the records are sought not for any monetary value they may possess. Complaint, ECF 1, ¶ 43. *Id.* at ¶ 43 n. 1. Courts in this District have strictly construed such monetary calculations as a requirement for sustaining a replevin action. *See BMO Harris Bank N.A. v. Dist. Logistics, LLC*, 2021 U.S. Dist. LEXIS 255094 at *7 (D.D.C. Jul. 23, 2021) (dismissing an otherwise successful replevin action for failure to strictly adhere to the requirements of D.C. Code §§ 16-3702 through 16-3704 when seeking a writ of replevin).

> **d. Federal Common Law is Narrow and Does Not Apply Here to Save the United States' Complaint**

The United States' last-ditch effort to save its flawed complaint is based on *Boyle v. United States Techs. Corp.*, 487 U.S. 500 (1988), which the United States argues allows the Court to use federal common law to create a quasi-replevin action. The United States seeks to portray the use of federal common law as broad when it involves matters of the federal Untied States, however this cuts against the exact language of the court's opinion in *Boyle*: "we have emphasized that federal common law can displace state law in few and restricted instances[,]" and limits such instances to areas where Congress has expressively given the courts power to develop substantive law, and areas where federal common law would be necessary to protect "uniquely federal interests." *Boyle*, 487 U.S. at 504 (quoting *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640 (1981)).

The United States cites no case law to suggest that Congress has given the courts power to create law meant to supersede an audit of a former United States employee's emails where the

United States suspects that the employee may have Presidential records subject to the PRA. Further, the United States only asserts that this complaint involves uniquely federal interests, and cites that the PRA requires NARA "make [Presidential] records available to the public as rapidly and completely as possible consistent with the provisions of this chapter." ECF 7-1, at 10. Their arguments makes clear that they are subject to the provisions of 44 USC § 2201-2209 to achieve their purposes under the PRA, that no case law exists where a court used federal common law to grant an action under PRA, and that they have nothing beyond their assertion that this complaint involves uniquely federal interests to such an extent that it would require this Court to effectively make law to grant the United States the relief sought in the complaint.

      **e.  The Act-of-Production Privilege**

As has been stated herein, the timing and events of this action, his contempt of congress indictment, and of the Subcommittee's disclosures led Dr. Navarro to reasonably believe that the Executive and Legislative Branches were coordinating their efforts so as to ultimately affect Dr. Navarro's penal interest. Dr. Navarro outlined his concerns in correspondence to Gary Stern, General Counsel for NARA, on July 29, 2022. Specifically, Dr. Navarro advised of his request for immunity based upon an assertion of the "act of production privilege," which protects the interests of an individual in providing materials in response to a subpoena that may affect the individual's right against self-incrimination. In response, the United States filed the instant action. Thus, while the United States' Complaint would suggest that this action concerns a straightforward request for the "return of Presidential records," it is in fact far more complex.

Here, Dr. Navarro has asserted a privilege validly delaying the time within which he must produce the records sought by the Archivist. The Supreme Court has recognized that the act of producing materials in response to a subpoena or other request implicates an individual's

privilege against being compelled to incriminate themselves through testimony, and as such a so-called act-of-production immunity exists. *See Fisher v. United States*, 425 U.S. 391, 410-11 (1976). This immunity is based upon an individual's right against self-incrimination enshrined in the Fifth Amendment, and it precludes the United States from compelling the production of records which, by implication both acknowledges "the existence of the papers demanded and their possession or control." *Id. See also In re Grand Jury Subpoena Duces Tecum*, 670 F. 3d 1335, 1339-40 (11th Cir. 2012) (absent a grant of full use and derivative immunity, the United States cannot compel a subject to decrypt his computer hard drives when decryption itself would be testimonial). Moreover, Dr. Navarro is not a custodian of any responsive records such that his production of the same could not be used against him in a criminal proceeding. *See United States v. Dean*, 989 F.2d 1205, 1208-11 (D.C. Cir. 1993).

**CONCLUSION**

For the foregoing reasons, Dr. Navarro respectfully requests the Court deny the United States' Motion for Summary Judgment and enter judgement in favor of Dr. Navarro.

[SIGNATURE ON NEXT PAGE]

Dated: October 21, 2022                    Respectfully submitted,

                                  */s/ Stanley E. Woodward, Jr.*

Stan M. Brand (D.C. Bar No. 213082)
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
Mark N. Nobile (D.C. Bar No. 1780761)
BRAND WOODWARD LAW, LP
1808 Park Road NW
Washington, DC  20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel for Defendant Peter K. Navarro*

## <u>CERTIFICATE OF SERVICE</u>

On October 21, 2022, the undersigned hereby certifies that a true and correct copy of the

foregoing was electronically filed and served via the CM/ECF system, which will automatically

send electronic notification of such filing to all registered parties.

*/s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD LAW, LP
1808 Park Road, Northwest
Washington, DC  20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com
