**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**   ) | |
| ) | **Case No. 1:22-cv-02292-CKK** |
| **v.**   ) | |
| ) | |
| **PETER K. NAVARRO,**   ) | |
| ) | |
| **Defendant.**   ) | |
| ) | |

**DEFENDANT PETER K. NAVARRO'S RESPONSE TO THE GOVERNMENT'S**
<u>**STATEMENT OF UNDISPUTED MATERIAL FACTS**</u>

Pursuant to Local Rule 7(h)(1), Defendant Peter Navarro submits the following response to the Government's Statement of Material Facts.  The government's proffered facts will be provided in regular font accompanied by a number, and Dr. Navarro's response will be accompanied by a letter and bolded:

1.      Defendant Peter K. Navarro (Defendant) was employed by the White House Office in the Executive Office of the President from January 20, 2017, until January 20, 2021. See Trump White House, People, Peter Navarro, https://trumpwhitehouse.archives.gov/people/peter-navarro/; Navarro v. Pelosi, 1:22-cv-01519 (D.D.C.), Compl. ¶ 1 (Preliminary Statement filed by Peter K. Navarro) ("For the four years of the Trump administration, . . . [Mr. Navarro] served as a senior White House advisor to [then-] President Donald John Trump.").

      a.   **Undisputed**

2.      From approximately January 20, 2017, until approximately April 29, 2017, Defendant served as Assistant to the President, Director of Trade and Industrial Policy, and the inaugural head of the White House National Trade Council. See Trump White House, People, Peter Navarro, https://trumpwhitehouse.archives.gov/people/peter-navarro/.

a. **Undisputed**

3.　　From approximately April 29, 2017 until approximately January 20, 2021, Defendant

served as Assistant to the President and Director of the Office of Trade and Manufacturing

Policy (OTMP). See Trump White House, People, Peter Navarro,

https://trumpwhitehouse.archives.gov/people/peter-navarro/. "[I]n his role as Director of OTMP,

[Defendant] advise[d] the President on policies to increase economic growth, decrease the trade

deficit, and strengthen Americas' manufacturing and defense industrial bases." *Id.*

a. **Undisputed**

4.　　The Office of Trade and Manufacturing Policy existed within the White House Office.

*See* Presidential Executive Order on Establishment of Office of Trade and Manufacturing Policy

(Apr. 29, 2017), https://trumpwhitehouse.archives.gov/presidential-actions/presidential-

executive-order-establishment-office-trade-manufacturing-policy/).

a. **Undisputed**

5.　　In addition to those responsibilities noted in paragraphs 2-3 above, in March 2020, then-

President Donald J. Trump appointed Defendant to coordinate the government's use of the

Defense Production Act, 50 U.S.C. § 4501 *et seq.*, to respond to the COVID-19 pandemic. *See*

Remarks by President Trump, Vice President Pence, and Members of the Coronavirus Task

Force in Press Briefing (Mar. 28, 2020), https://trumpwhitehouse.archives.gov/briefings-

statements/remarks-president-trump-vice-president-pence-members-coronavirus-task-force-

press-briefing-13/.

a. **Undisputed**

6.      By virtue of his positions and work described above in paragraphs 1-4, Defendant was on "the President's immediate staff" and/or "in a unit or individual of the Executive Office of the President whose function is to advise or assist the President." 44 U.S.C. § 2201(2).

      a.   **Undisputed**

7.      The Presidential Records Act (PRA), 44 U.S.C. § 2201 et seq., creates a framework for the preservation of certain records, termed "Presidential records" (Presidential records) by the statute, id. § 2201(2), created or received by the President, Vice President, and persons who advise and assist them.

      a.   **Undisputed**

8.      According to the PRA, the term "Presidential records" means, with certain conditions and exceptions, "documentary materials, or any reasonably segregable portion thereof, created or received by the President, the President's immediate staff, or a unit or individual of the Executive Office of the President whose function is to advise or assist the President, in the course of conducting activities which relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President." 44 U.S.C. § 2201(2).

      a.   **Undisputed**

9.      E-mail and other electronic messages, including electronic messages sent and received on non-official electronic message accounts, constitute Presidential records to the same extent as hard copy documents. 44 U.S.C. §§ 2201, 2209.

      a.   **Disputed only to the extent that the statute is vague as to how and to what extent it applies to email records, which is discussed in Dr. Navarro's**

> **opposition.  Dr. Navarro does not dispute, however, that e-mail and other electronic messages can constitute Presidential records.**

10.     The PRA requires the President, Vice President, and "covered employee[s]" to "cop[y]" their "official electronic messaging account" when sending a communication using a non-official account or to "forward[] a complete copy" of an email sent on their non-official account to their "official electronic messaging account . . . not later than 20 days after the original creation or transmission" of the record. 44 U.S.C. §§ 2209(a)(1), (a)(2). "Covered employee[s]" include, inter alia, "the immediate staff of the President" and "a unit or individual of the Executive Office of then President whose function is to advise and assist the President." *Id.* § 2209(c)(1).

      a.  **Undisputed**

11.     In February 2017, the White House Counsel's Office issued a memorandum to White House personnel regarding the use of non-official email accounts to conduct official business, writing: "If you ever send or receive email that qualifies as a presidential record using any other account [i.e., other than the official government account], you must preserve that email by copying it to your official EOP email account or by forwarding it to your official email account within twenty (20) days." Compl. Ex. 1 at 2, ECF No. 1-2 (Memorandum for All Personnel, from Deputy White House Counsel Stefan C. Passantino, through Counsel to the President Donald F. McGahn (Feb. 22, 2017)) (WHCO Memorandum)).

>       a.  **Disputed only to the extent that the memorandum interprets the law more broadly than the language of 44 U.S.C. 2209(a) in that it states that emails which are received must be forwarded to a government account.**

12.     The United States "retain[s] complete ownership, possession, and control of Presidential records." 44 U.S.C. § 2202.

a.  **Undisputed**

13.     At the end of a presidential administration, the Archivist of the United States is, under the

PRA, required to "assume responsibility for the custody, control, and preservation" of

Presidential records and to "make such records available to the public as rapidly and completely

as possible consistent with the provisions of this chapter." 44 U.S.C. § 2203; Compl. Ex. 4 at ¶¶

2-3, ECF No. 1-5 (Declaration of William J. Bosanko).

a.  **Undisputed**

14.     While serving in the White House, Defendant used at least one non-official email

account—an account hosted by the non-official service ProtonMail—to send and receive

messages constituting Presidential records. See Compl. Ex. 2, ECF 1-3 (emails to/from

Defendant's ProtonMail account); *accord* Bosanko Decl. ¶ 6. Some of these emails were

obtained by the House Select Subcommittee on the Coronavirus Crisis (the Subcommittee) as

part of its investigation into the government's response to the coronavirus pandemic. *See* Select

Subcommittee on the Coronavirus Crisis, Select Subcommittee Releases New Evidence Of

Trump Administration Failure To Heed Early Pandemic Warnings: New Documents Show that

Peter Navarro and other Trump Administration Advisors Used Private Email Accounts to

Communicate about Pandemic Response (Sept. 14, 2021),

https://coronavirus.house.gov/sites/democrats.coronavirus.house.gov/files/9.14.21%20Navarro%

20Document%20Release.pdf) ; *see also Compl.* Ex. 2, ECF 1-3.

a.  **Undisputed.**

15.      Defendant did not copy each email or message constituting Presidential records that was

sent or received on his non-official account or accounts to his official government email account.

Bosanko Decl. ¶ 5.

a. **Disputed in that the statute is vague as to whether the receipt of emails on a personal account creates a Presidential record and/or whether and to what extent the emails received on Dr. Navarro's email account were ever Presidential records.  An audit is ongoing to determine the emails responsive to NARA's correspondence.**

16.    Defendant continues to have Presidential records in his possession, custody, and/or control. Bosanko Decl. ¶¶ 6-10 & Attachment A (July 29, 2022 letter from John S. Irving to Gary M. Stern) (acknowledging continued possession, custody, and/or control).

a. **Disputed in that the audit of Dr. Navarro's email is ongoing, so the extent of whether or what Presidential records are in his possession, custody, and/or control is unknown at this time.**

[SIGNATURE ON NEXT PAGE]

Dated: October 21, 2022

Respectfully submitted,

_____*/s/ Stanley E. Woodward, Jr.*_____
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD LAW, LP
1808 Park Road NW
Washington, DC  20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel for Defendant Peter K. Navarro*