IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | )<br>)<br>) |
| v. | ) Case No. 1:22-cv-02292-CKK<br>)<br>) |
| **PETER K. NAVARRO,** | )<br>) |
| **Defendant.** | )<br>)<br>) |

**DEFENDANT'S REPLY IN SUPPORT OF
<u>MOTION TO DISMISS</u>**

The Presidential Records Act of 1978 ("PRA"), 44 U.S.C. §§ 2201-2209, is a statute that is notoriously considered vague and "toothless," and the relief sought by the United States here has been granted only in the most extraordinary of circumstances. *See* Sara Worth, *Trump and the Toothless Presidential Records Act*, YALE LAW SCHOOL MEDIA FREEDOM AND INFORMATION ACCESS CLINIC (Mar. 11, 2019),[1] (outlining the limited nature of the PRA and its clear statutory intent to bind the president for record keeping responsibilities). *See also CREW v. Trump*, No. 1:17-cv-01228 (D.D.C. 2017) (holding that any relief granted under PRA is limited and requires a showing of clear and indisputable harm), *aff'd* 924 F. 3d 602 (D.C. Cir. 2019). Dr. Navarro has no interest in indefinitely retaining any records he may possess that fall within the ambit of the PRA, but reiterates that the Act itself does not provide the relief the United States seeks.

**I.  The Statutory Provisions of the Presidential Records Act Are Relevant to This Action**

As a threshold issue, the United States seeks to portray statutory arguments contained in Dr. Navarro's Motion to Dismiss and his Opposition to the Motion for Summary Judgment as

---

[1] Available at https://law.yale.edu/mfia/case-disclosed/trump-and-toothless-presidential-records-act.

irrelevant to the issue before the Court. Reply at 4 (Nov. 4, 2022) (ECF No. 13).[2] This assertion is inaccurate; the United States seeks to use an ambiguous statute to grant broad relief that a reading thereof does not provide. *See generally* Complaint ¶ 51 (Aug. 3, 2022) (ECF No. 1) (seeking a writ of replevin authorizing the recovery of any presidential records in the possession, custody, and/or control of Dr. Navarro, an order requiring Dr. Navarro implement a writ of replevin or other similar order, award the United States damages, award the United States costs and attorneys' fees, and any other relief the Court deems just). The limited nature of the PRA is, at its core, a basis for dismissing the Complaint for a failure to state a claim.

The United States completely abandons any theory of relief encapsulated within the PRA and instead asserts: 1) that the PRA created a hard deadline for Dr. Navarro to turn over certain presidential records once Donald Trump's tenure in the White House ended, if such documents remained in his control; 2) that the PRA explicitly states that personal email accounts cannot be used to receive and send presidential records and that such section creates a cause of action for the United States if such procedures were not followed; and 3) replevin and/or federal common law can be used under the PRA to retrieve alleged presidential records in a person's control. *See* Compl. ¶¶ 39-50 (outlining the United States' non-official email account and replevin/federal common law claims). *See also* Motion for Summary Judgment, at 3 (Sep. 26, 2022) (ECF No. 7.1) (claiming that the PRA creates a deadline for when presidential records "are required to be turned over to NARA no later than the end of the [presidential] administration."). Each of the

---

[2] Pursuant to the Court's briefing schedule order, the United States submitted a combined Reply in Support of its Motion for Summary Judgment and Opposition to Dr. Navarro's Motion to Dismiss. Also pursuant to the Court's briefing schedule order, Dr. Navarro's instant submission is limited to a reply in support of his Motion to Dismiss. However, the United States does not clearly delineate whether assertions are made only as to a Reply in Support of the Motion for Summary Judgment, in Opposition to Dr. Navarro's Motion to Dismiss, or both. Counsel for Dr. Navarro therefore has endeavored to address only those issues raised in Dr. Navarro's Motion to Dismiss, but notes the challenge in so doing as a result of the lack of specific delineation by the United States.

issues with these arguments was discussed in Dr. Navarro's Motion to Dismiss. *See* Motion to Dismiss at 3-10 (Oct. 11, 2022) (ECF No. 9). To summarize: the PRA does not create an explicit deadline for when to turn over documents; rather it states that at the end of a president's tenure the Archivist of NARA, "assume[s] all responsibility for the custody, control, and preservation of, and access to, the Presidential records of that President." 44 U.S.C. 2201(g)(1). The PRA does not state that all emails on a personal email account that may be presidential records must be preserved, only those that a covered employee, "send[s]" from, or, "create[s]," on that email account. 44 U.S.C. 2209(a). Further, failure to follow 44 U.S.C. 2209(a) does not seem to provide the United States with a cause of action; rather, it states that intentional violations of such provision can be used as a basis for an adverse personnel action. *Id.* at (b). Nowhere else has this statute ever been interpreted, and never has it been interpreted to create any cause of action. Finally, the statute is silent as to any enforcement provision. Yet the United States has consistently asserted as a matter of right they are entitled to replevin or federal common law under the PRA.

The United States' claim that these statutory ambiguities and inconsistencies are wholly irrelevant is incorrect, because unless the Court accepts the United States' assertions of the broad implied provisions that cannot be found anywhere in the PRA, then the United States has failed to state a claim upon which relief can be granted and the Complaint must be dismissed. As stated in the Motion to Dismiss, the Court must determine that the United States has pleaded facts that, "[include] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See United States ex rel. Scott v. Pac. Architects & Eng'rs, Inc.*, 270 F. Supp. 3d 146, 152 (D.D.C. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2007)). However, the Court need not, "accept as true a legal conclusion

couched as a factual allegation." *Chatman v. U.S. Dep't of Def.*, 270 F. Supp. 3d 184, 188 (D.D.C. 2017) (quoting *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 529-30 (D.C. Cir. 2015)).

Ultimately, the United States has not met this standard to survive a motion for summary judgment: the United States has alleged that Dr. Navarro *might* have presidential records subject to the PRA, and then has used this "might" to argue that Dr. Navarro's alleged possession of these records violated a nonexistent deadline. Motion for Summary Judgment, at 3 (Sep. 26, 2022) (ECF No. 7.1). The United States then argues that because Dr. Navarro *might* have used a personal email to send or receive some emails during his tenure in the White House, this clearly violates a vague and uninterpreted section of the PRA. Compl. ¶ 4. The United States then argues without providing any support that, even though this section of the PRA only includes a very limited disciplinary provision, that it actually provides them with an expansive cause of action. *Id*. at ¶¶ 39-50 ("[Dr.] Navarro created and received Presidential records on one or more non-official email. . . did not ensure that his official electronic email account included copies of all presidential records created or received on one or more non-official email accounts. . . [a]ccordingly, [Dr.] Navarro has unjustly retained property of the United States in the form of Presidential records."). The United States also represents that even though this section they rely on does not include the term "received," it clearly applies to emails received on a personal email because a different section of the PRA uses the term "received" in a different context. Motion for Summary Judgment, at 6-7 (Sep. 26, 2022) (ECF No. 7.1). Finally, the United States argues that because Dr. Navarro ultimately missed a nonexistent deadline and violated a nonexistent duty, the United States is now unquestionably owed replevin or federal common law through a nonexistent enforcement mechanism of the PRA. *See id*. at p. 4, 7, 10, 12-13 (arguing that the

applicability of replevin to intangible emails is clearly the proper cause of action based on the fact that, in unrelated cases from other districts like *Zook* and *McElvenny*, the United States has pled that a writ of replevin for the return of the United States's physical property was proper). Further, the United States has failed to address the issue that replevin requires the wrongful withholding of "personal property." While the United States contends that D.C. defines personal property as anything that is not real property, there is case law that suggests that intangible property, like emails, are not personal property and thus would not be subject to a replevin action. *See Ficken v. AMR Corp.*, 578 F. Supp. 2d 134, 143 (D.D.C. 2008) (denying a replevin action for intangible rights like frequent flyer miles, despite frequently flyer miles clearly not being real property).

Ultimately, the representations made in the United States' Compliant have amounted to numerous conclusory statements in search of a nonexistent legal remedy. As such, the Court should dismiss the United States' complaint for failure to state a claim upon which relief can be granted.[3]

## II. Dr. Navarro Does Not Seek to Hold Onto Any Presidential Records Indefinitely

The United States has based a portion of their argument on a claim that Dr. Navarro seeks to indefinitely hold on to any presidential records that are in his possession. Reply at 13 (Nov. 4,

---

[3] It is Dr. Navarro's position that this action is not necessary and/or not appropriate under the PRA, and that is the sole reason why Dr. Navarro files the underlying Motion to Dismiss. Dr. Navarro has never once contended that any presidential records in his possession are actually his property rather than the United States'. As the United States has been informed throughout this process, Dr. Navarro intends to turn over any presidential records as soon as any presidential records are identified through the audit and as soon as the potential incrimination issues are resolved. The United States has implied a more nefarious purpose for Dr. Navarro's seeking this motion to dismiss, or at the very least implied Dr. Navarro's filing of a Motion to Dismiss demonstrates that he is not acting in good faith, which Dr. Navarro ardently denies. Reply at 9 n.6 (Nov. 4, 2022) (ECF No. 13) ("Dr. Navarro's assurance of future cooperation rings hollow, given his persistent refusal to returns [*sic*] the records, not to mention his pending motion to dismiss the Complaint on the grounds that the United States has no legal right to recover the records that it legally owns.").

2022) (ECF No. 13)  However, this misstates Dr. Navarro's position on any records in his possession: Dr. Navarro must identify any presidential records in his possession before he is able to turn them over, unless the United States now seeks to represent that all emails in his personal account are presidential records.  *See* July 29, 2022 Letter from Dr. Navarro to NARA General Counsel (ECF No. 1-5) ("As discussed on Monday, July 25, we have been actively working to identify records within Mr. Navarro's possession, custody, and/or control that are potentially responsive to NARA's request.  As you know, this effort has already involved a substantial investment of time and resources.  Specifically, we have now completed the process of creating a forensic image of Mr. Navarro's cell phones and have also completed an extraction of records from Mr. Navarro's personal Protonmail account, all of which we will continue to preserve consistent with our ethical obligations.").  While the United States has alleged the existence of hundreds of presidential records in Dr. Navarro's personal email, Dr. Navarro's audit has not revealed anywhere near that amount.  Reply at 18 (Nov. 4, 2022) (ECF No. 13).  Even still, the term "presidential records" does have its limits, meaning that even if the audit were to identify documents which respond to terms identified by the firm and/or the United States, the decision still must be made as to whether those documents are actually responsive before they are turned over.

While the ongoing audit has revealed some documents that may be presidential records pursuant to the PRA, the United States has consistently made the claim that the current results of the audit are incomplete because the terms used in the audit were underinclusive, even though the United States acknowledges that counsel for Dr. Navraro used NARA's proposed search terms.  *See* Gov. Motion for Summary Judgment, at pp. 7-8 (alleging that Dr. Navarro acknowledged possessed at least 200 presidential records, and claiming this number was "based

only on underinclusive search terms." However, in a previous portion of the motion, the United States stated that the supposedly underinclusive search terms were provided by NARA; counsel for Dr. Navarro stated that a review of the results revealed that most of the documents were definitely not presidential records, and the remaining 200 would need to be reviewed for responsiveness). The United States knew that Dr. Navarro was conducting this audit, as Dr. Navarro provided consistent updates as the audit progressed, but still filed this unnecessary action.[4] The United States seeks to have it both ways: it seeks to have Dr. Navarro turn over all documents in his possession as soon as is physically possible, but it also seeks to have Dr. Navarro not take the time required to actually identify what documents in his possession, if any, are presidential records.

Dr. Navarro requests that, if the Court does grant the United States the relief that it seeks, that the Court also set a reasonable schedule for finishing the email audit in such a way that would allow Dr. Navarro to identify and turn over only the emails that may or may not be in his possession that are presidential records under the PRA, which may be a time-consuming process. The fact that the PRA does not set any deadline for conducting this audit only demonstrates further the reasonableness of this request.

### III.    The Act of Production Privilege is Proper

As it relates to the act-of-production privilege, the United States once again takes two separate positions: the United States seeks to portray that it is impossible for Dr. Navarro to be prosecuted for producing any presidential records that may be in his possession, which would mean he has no act of production privilege, while also claiming that any documents that may be

---

[4]    The United States has alleged that Dr. Navarro stopped providing them updates as to the audit. *See* Reply at 9 n.6 (Nov. 4, 2022) (ECF No. 13) ("Nor does [Dr. Navarro] give any indication that he is currently working toward completing his purported audit."). However, these updates only ceased once the United States filed the instant Complaint.

in Dr. Navarro's possession are "wrongfully withheld" from the United States, implying that the United States believes that Dr. Navarro has acted in such a way that they could pursue a future indictment for keeping their own property away from them.  This incompatible dichotomy demonstrates exactly why Dr. Navarro has an act-of-production privilege and would explain any sort of potential hesitation that has kept Dr. Navarro from producing any documents that may be in his possession:[5] the United States clearly feels that Dr. Navarro has infringed upon their rights to the alleged presidential records, and their word alone that Dr. Navarro would not face prosecution does not prevent these government officials, or other government officials, from indicting Dr. Navarro for their perceived belief that he allegedly wrongfully retained documents or for the material contained with the documents in the future.

Ultimately, if the United States actually does not intend to indict Dr. Navarro based on the actions alleged in this Complaint, the United States should without controversy agree to provide Dr. Navarro with immunity relating to any documents that the United States believes Dr. Navarro has wrongfully withheld.  Otherwise, Dr. Navarro intends to fully litigate the issue of the act of production privilege, an issue upon which he is confident he would succeed.  Such immunity would go a long way in resolving this issue without needing to involve the court further.

### IV. The Lack of Binding Case Law Precludes a Motion for Summary Judgment

The United States has sought to portray the lack of binding case law interpreting the PRA as something that should be brushed off and ignored.  However, the fact remains that in seeking summary judgment, the United States has an extremely high burden to establish that there are no

---

[5] As stated herein and in prior pleadings, Dr. Navarro intends to turn over documents that are properly identified as "presidential records" once they are accurately identified through the audit and once the issue of potential self-incrimination has been litigated and resolved.

disputes as to material facts and that they are owed judgment as a matter of law.[6]  Frankly, the United States' claim that a statute that does not say a large portion of what the United States argues should make their claim that they are owed judgment pre-trial is unconvincing, and it is even less convincing to see that they are unable to cite any case law to support they are owed a judgment pre-trial.  As such, the Court should very clearly deny the United States' motion for summary judgment for the United States' inability to establish the high burden required to grant a summary judgment.

## CONCLUSION

For the reasons contained herein, the Court should deny the United States' motion for summary judgment and grant Dr. Navarro's motion to dismiss the complaint.  The United States has argued a thin factual case and provided no statutory provisions or case law which support their representation that the Court can even issue a writ of replevin or use federal common law under the PRA to force Dr. Navarro to turn over the presidential records alleged to be in his possession.  Even if it could, it would take Dr. Navarro time to complete the audit that is already in process to identify what presidential records, if any, he would have to turn over.  Further, if any documents are been identified by the audit and the potential issue of self-incrimination that creates Dr. Navarro's act-of-production privilege has been resolved, Dr. Navarro fully intends to turn over such documents to the United States.

In the alternative and to expedite this process, this Court should order that the United States issue an immunity order to Dr. Navarro which would preclude them from using the

---

[6]   Dr. Navarro opposes the United States' claim that there are no material facts that are disputed. The record of facts that the United States provided is not a complete record of facts at issue. However, because the rules and the Court's scheduling order make clear that this response is only supposed to be a reply in support of a motion to dismiss, Dr. Navarro will not press this matter further than what is on the record in his opposition to the motion for summary judgment.

production of these documents in any future criminal proceedings against Dr. Navarro. While the United States has represented that they have no intent to pursue an indictment for these documents, their word alone does not prevent them from turning around in the future and pursuing an indictment. Further, the United States has been very aggressive in pursuing criminal indictments against members of the Trump administration, which highlights why Dr. Navarro reasonably fears prosecution for what ultimately amounts to an honest mistake, if any such presidential records are even in his possession. Otherwise, Dr. Navarro intends to fully litigate the issue of act of production privilege in the Court before he turns over any presidential records that may or may not be in his possession that the United States may seek to use as the basis for a future indictment.

[SIGNATURE ON NEXT PAGE]

Dated: November 14, 2022	Respectfully submitted,

        */s/ Stanley E. Woodward, Jr.*
Stan M. Brand (D.C. Bar No. 213082)
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
Mark N. Nobile (D.C. Bar No. 1780761)
BRAND WOODWARD LAW, LP
1808 Park Road NW
Washington, DC  20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel for Defendant Peter K. Navarro*

**CERTIFICATE OF SERVICE**

On November 14, 2022, the undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed and served via the CM/ECF system, which will automatically send electronic notification of such filing to all registered parties.

                                                  */s/ Stanley E. Woodward, Jr.*
                                         Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
                                         BRAND WOODWARD LAW, LP
                                         1808 Park Road, Northwest
                                         Washington, DC  20010
                                         202-996-7447 (telephone)
                                         202-996-0113 (facsimile)
                                         Stanley@BrandWoodwardLaw.com