IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) |
| PETER K. NAVARRO | ) |
| Defendant. | ) |

### DEFENDANT'S MOTION FOR STAY PENDING APPEAL

For the first time ever, this Court has held that the United States of America may seek the enforcement of the Presidential Records Act, 44 U.S.C. §§ 2201-2209, through the laws of the District of Columbia – not even that of a State, but rather a Federal District. Defendant Dr. Peter K. Navarro, by and through the undersigned counsel, respectfully requests this Court stay its March 10, 2023 Order granting summary judgment and ordering Dr. Navarro to enact the forthwith transfer of 200 to 250 previously identified as records as defined under the PRA so as to allow the United States Circuit Court for the District of Columbia to rule on an application for the stay of this Court's Order. Dr. Navarro will seek the same before the close of business on Friday, March 24, 2023, or as soon as an appeal is docketed with the Circuit, whichever is later.

I.   **LEGAL STANDARD**

Generally, stays are considered an extraordinary remedy, and require the party seeking a stay to bear the, "burden of showing that exercise of the court's extraordinary injunctive powers is warranted." *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985). There are four "traditional" factors that govern a request for a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether

the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S. Ct. 2113, 95 L. Ed. 2d 724 (1987); *see also generally Montgomery v. Rosen*, 2021 U.S. App. LEXIS 1160 (D.C. Cir. Jan. 11, 2021) (D.C. Circuit granting a stay pending appeal based on the factors outlined in *Nken*).

The first two factors, "are the most critical[]" in determining whether to grant a motion to stay, *Nken*, 556 U.S. at 434, while the last two "merge when the Government is the opposing party." *Id.* at 435. Importantly, in cases of first impression, courts have granted stays without considering these factors as stringently. *See Comm. On the Judiciary v. McGahn*, 407 F. Supp. 3d 35, 40 (D.D.C. 2019) (noting that the D.C. Circuit in *Comm. on Judiciary, U.S. House of Representatives v. Miers*, 542 F.3d 909 (D.C. Cir. 2008) did not apply the strict four-factor test to grant a stay in a case of an interlocutory appeal involving a matter of first impression in the D.C. Circuit, and noting the tendency for the Courts to be more lenient granting stays in matters of first impression). Here, for the first time ever, the Court has ordered that the United States of America may utilize the courts to force the repossession of another's property and enforce the Presidential Records Act, 44 U.S.C. §§ 2201-2209, through the laws of the District of Columbia – not even that of a State, but rather a Federal District. It is thus beyond dispute that this litigation involves a case of first impression.

## II. ARGUMENT

### a. Dr. Navarro is Likely to Succeed on the Merits

The chance that a movant will succeed on the merits must be, "substantial," in order to grant a stay pending appeal. *McGahn*, 407 F. Supp. 3d at 38 (quoting *Washington Metro. Area*

*Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977). The party seeking the stay must, "raise[] questions going to the merits so serious, substantial, difficult[,] and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." *McGahn*, 407 F. Supp. 3d at 38 (internal quotations omitted) (quoting *Holiday Tours, Inc.*, 559 F.2d at 844).

For the first time ever, this Court has held that the United States of America may seek the enforcement of the Presidential Records Act ("PRA"), 44 U.S.C. §§ 2201-2209, through separate laws of the District of Columbia – not even that of a State, but rather a Federal District. As the Supreme Court recently admonished, "[w]e expect Congress to speak clearly when authorizing an agency to exercise powers of 'vast economic and political significance.'" *Ala. Ass'n Realtors v. HHS*, 141 S. Ct. 2485, 2489 (2022) (quoting *Utility Air Regulatory Group v. EPA*, 573 U.S. 302, 324 (2014)).

Surely the implication of the doctrine of federalism and private property rights – "[t]he 'constitutionally mandated balance of power' between the States and the Federal Government . . . adopted by the Framers to ensure the protection of 'our fundamental liberties,'" *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 242 (1985) (quoting *Garcia v. San Antonio Metro. Transit Authority*, 469 U.S. 528, 572 (1985) (Powell, J., dissenting)) – qualifies both as an issue of first impression as well as one that "raises questions going to the merits so serious, substantial, difficult[,] and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." *McGahn*, 407 F. Supp. 3d at 38 (internal quotations omitted) (quoting *Holiday Tours, Inc.*, 559 F.2d at 844). "Just as the separation and independence of the coordinate branches of the Federal Government serve to prevent the accumulation of excessive power in any one branch, a healthy balance of power between the States and the Federal Government will reduce the risk of tyranny and abuse from either front." *Gregory v. Ashcroft*, 501 U.S. 452, 458 (1991).

As Alexander Hamilton explained to the people of New York, the federalist system is designed to suppress completely, "the attempts of the government to establish tyranny." The Federalist No. 28, pp. 180-181 (C. Rossiter ed. 1961), *quoted in Gregory*, 501 U.S. at 459.

The Court misconstrues – presumably inadvertently – Dr. Navarro's argument in surmising that Dr. Navarro asserts he has no statutory responsibility under the PRA. Memorandum Opinion at 10-11 (March 9, 2023) (ECF No. 16). Dr. Navarro's position is rather that the PRA has sections which explicitly only apply to the President and/or to the Archivist, while other sections apply to a broader group of executive branch officials that would include Dr. Navarro. *See* Opp. Motion for Summ. J., at 4-5 (Oct. 21, 2022) (ECF No. 11); Motion to Dismiss, at 7 (Oct. 11, 2022) (ECF No. 9).

At bottom, the rationale of the United States is that the PRA requires that executive branch officials provide records prior to a specific, statutory deadline that does not exist. The United States submits, and the Court adopts, that Dr. Navarro missed an affirmative statutory deadline that only explicitly applies to the Archivist, and has thus wrongfully withheld certain records subject to the PRA such that replevin is warranted. Complaint at ¶ 23 (Aug 3, 2022) (ECF No. 1) (citing 44 U.S.C. § 2203(g), a section which only states that the Archivist has specific responsibilities at the end of a Presidential Administration, for the proposition that any emails that are records under the PRA in the possession of Dr. Navarro, "are required to be turned over to the Archivist upon the end of the administration"). Indeed, the fact that the PRA places some responsibility upon "covered employees," such as Dr. Navarro, does not change the fact that the statute is generally applicable only to the President and/or to the Archivist.

In reality, the only provision of the PRA relevant to Dr. Navarro for purposes of the instant action is § 2209, the only section which puts any affirmative duties upon "covered employees,"

and in fact the only section of the PRA to use the term "covered employees." Moreover, § 2209 explicitly limits its purview to records "created or sent" by a private email account and only provides a procedure to initiate an adverse *employment* action against "covered employees" who have willfully failed to turn over records created by private email. See 44 U.S.C. § 2209.

It is the very statutory ambiguity and lack of precedent highlighted by Dr. Navarro that should cast doubt on the Court's granting a summary judgment, as the United States cannot assert that they are clearly owed judgment as a matter of law when there is a lack of clear and on-point binding case law and a lack of explicit enforcement provisions for the PRA that would allow the Court to use the PRA to compel the production of any records as defined under the statute.

To that end, Dr. Navarro also respectfully disagrees with the Court's conclusion that he has not adequately contested the applicability of the D.C. Code's replevin section to recover records subject to the PRA. *See* Memorandum Opinion at 17-18 (March 10, 2023) (ECF No. 16). The crux of Dr. Navarro's argument is and has been that the PRA does not provide any vehicle for the recovery of records subject to the PRA once a "covered employee" has separated from the United States. *See* MTD at 8, MSJ Opp. at 8. Not only is the D.C. replevin statute unrelated to the PRA, it is a statute that has rarely considered by the District's courts, which nevertheless have imposed strict pleading standards that the United States failed to meet. While the Court concludes the replevin standards are not so strict and/or that the United States has met the requisite standard, other decisions from this District have held otherwise. *See Deegan v. Strategic Azimuth LLC*, 768 F. Supp. 2d 107, 115-17 (D.D.C. 2011) (noting that a replevin action requires specific pleading of value in dollars of the alleged wrongfully withheld material regardless of if they are goods, chattels, or eloigned, and dismissing an otherwise valid replevin complaint because, "the D.C. Code is very particular about how any complaint in replevin must be phrased").

In effect, the United States seeks to usurp the legislative prerogative of Congress by utilizing the statute of a Federal District to enforce the PRA for separated "covered employees" where the PRA itself does not otherwise provide any enforcement mechanism. The issue of whether a federal agency can use unrelated statutes to enact their purposes has recently been considered by the Supreme Court. In *Alabama Association of Realtors, et al vs. Department of Health and Human Services, et al*, the Supreme Court considered whether the Centers for Disease Control ("CDC") could rely upon a statute which granted them specific methods to curb the spread of the Covid-19 pandemic to administratively impose a moratorium on evictions in high-volume Covid-19 cities. 141 S. Ct. 2485 (2021). The Court found that Congress is typically expected to, "speak clearly when authorizing an agency to exercise powers of vast economic and political significance." *Id.* at 2489 (internal quotations omitted) (quoting *Utility Air Regulatory Group v. EPA*, 573 U. S. 302, 324, (2014)). Ultimately, the Court held that, even if the underlying goal of the moratorium on eviction was "in pursuit of a desirable end", the CDC had exceeded the scope of its statutory authority by relying on a limited statute to impose a broad moratorium and that were Congress to have intended for a national moratorium, it would need to expressly authorize it rather than let the CDC infer such broad authority on its own. *Ala. Ass'n of Realtors*, 141 S. Ct. at 2490.

The granting of summary judgment requires both a finding that there, "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Cowan v. FCC*, 2022 U.S. Dist. LEXIS 166363, at *14 (D.D.C. Sept. 15, 2022) (quoting Fed. R. Civ. P. 56(a)). While Dr. Navarro does not agree with the contention that there were no disputes of material fact, Dr. Navarro also made it explicitly clear that the United States is nevertheless not entitled to judgement as a matter of law. Summary Judgment is a "drastic remedy [and] courts

should grant it with caution so that no person will be deprived of his or her day in court to prove a disputed material factual issue." *Cowan v. FCC*, 2022 U.S. Dist. LEXIS 166363, at *14 (D.D.C. Sept. 15, 2022) (quoting *Greenberg v. FDA*, 803 F.2d 1213, 1216 (D.C. Cir. 1986)). Accordingly, Dr. Navarro is likely to succeed on the merits on appeal.

### b. Dr. Navarro is Likely to Suffer Irreparable Harm if Compelled to Provide the United States with Documents at Issue, Because He Has a Privilege Against Self-Incrimination and He is Subject to Multiple Government and Criminal Inquiries

The second factor requires that irreparable harm is, "both certain and great. . . and actual [rather than] theoretical." *Citizens for Responsibility & Ethics v. Fed. Election Comm'n*, 904 F.3d 1014, 1019 (D.C. Cir. 2018) (internal quotations omitted) (quoting *Wis. Gas Co. v. FERC,* 758 F.2d 669, 674 (D.C. Cir. 1985). Further, the movant must, "substantiate that irreparable injury is likely to occur." *Wis. Gas Co.*, 758 F.d at 674 (citing *Holiday Tours, Inc.*, 559 F.2d at 843 n.3).

Here, the harm is in fact both great and likely to occur. Despite the assertions of the United States, the Court's Order compels the production of records which cannot thereafter be returned. Indeed, as Dr. Navarro asserted in his briefing, the production of such records could potentially incriminate him in future criminal actions, a prospect that is very real insofar as the initiation of the request for such records was made at the behest of a congressional subcommittee unrelated to the National Archives and Records Administration. Complaint ¶¶ 27-28 ("Through the Subcommittee [ on the Coronavirus Crisis]'s work, NARA became aware of Mr. Navarro's use of a non-official email account to send and receive presidential records."). The requirement that Dr. Navarro turn over documents that could be then used against him in other proceedings clearly imposes upon his privilege against self-incrimination. *See United States v. Hubbell*, 530 U.S. 27 (2000).

### c. A Stay Will Not Harm the United States nor Affect the Public Interest

In cases where the party opposing the stay is the United States, the last two factors, "the harm to the opposing party and weighing the public interest[,] . . . merge when the Government is the opposing party." *Nken*, 556 U.S. at 435.

Ultimately, the United States has not stated any sort of harm that will befall them if they get the alleged PRA records once the criminal proceedings and government inquiries as they relate to Dr. Navarro have concluded.  Nor can the United States point to the statute to establish such a threat of harm to their intersests: the PRA itself states that the Archivist has an affirmative duty to make records, "available to the public *as rapidly and completely as possible consistent with the provisions of this chapter*." 2203(g)(1) (emphasis added).  Such a duty does not provide the United States with an interest that would be harmed if the transfer of PRA records had to wait until Dr. Navarro's rights are ensured as protected, because transferring the records at a later date still allows the United States to make them available as rapidly and completely as possible.

Similarly, the public interest will be minimally affected if a small batch of PRA records are delayed in their release.  The PRA makes clear that a portion of its purpose is to allow public access to certain records after the end of a President's term in office.  44 U.S.C. § 2204.  Such an interest is not negatively affected if the custodian of such records seeks to briefly delay the transfer of records to the Archivist in an effort to protect his own rights as they relate to the transfer.  Similarly, the statute allows the President to dictate for certain records to have their public access restricted for a period of up to 12 years, meaning the statute anticipated the potential that some documents would be delayed in their release by up to 12 years.  44 U.S.C. § 2204 (a).  Such a potential delay at the very least demonstrates that the United States and public understand that the access to records pursuant to the PRA may be delayed.

### d. The Scope of the Presidential Records Act's Enforcement Mechanisms are Matters of First Impression

Ultimately, the extent to which the PRA and an unrelated state statute can be used to compel a former White House employees to transfer records to the United States is a matter of first impression. Further, the United States has essentially admitted that this exact situation is a matter of first impression. *See* Combined Reply ISO Motion for Summary Judgment and Opposition to Defendant's Motion to Dismiss, p. 7, p. 7 n.4, (Oct. 4, 2022) (ECF No. 013). ("That no court has yet had occasion to interpret section 2209 [of the PRA] does not change the fact that it is the law, or that this Court is Competent to interpret it in the first instance. . . [j]urisprudence on the PRA is understandably sparse, as administrations have generally cooperated with White House lawyers, White House records professional, and the Archivist to ensure compliance with the PRA since its enactment.").

As this matter is a matter of first impression, the Court should grant the stay pending appeal as a result of this one factor alone.

### **CONCLUSION**

For all of the foregoing, Dr. Navarro respectfully requests this Court grant a stay of its March 10, 2023, Order so as to permit Dr. Navarro to similarly seek a stay from the United States Circuit Court for the District of Columbia while it considers his appeal.

[SIGNATURE ON NEXT PAGE]

Dated: March 22, 2023                               Respectfully submitted,

                                                                        /s/ Stan M. Brand
                                                                Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
                                                                Stan M. Brand (D.C. Bar No. 213082)
                                                                BRAND WOODWARD LAW, LP
                                                                1808 Park Road NW
                                                                Washington, DC  20010
                                                                202-996-7447 (telephone)
                                                                202-996-0113 (facsimile)
                                                                Stanley@BrandWoodwardLaw.com

                                                                *Counsel for Defendant Peter K. Navarro*

## CERTIFICATE OF SERVICE

On March 22, 2023, the undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed and served via the CM/ECF system, which will automatically send electronic notification of such filing to all registered parties.

Dated: March 22, 2023          Respectfully submitted,

                                           */s/ Stan M. Brand*
                                 Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
                                 Stan M. Brand (D.C. Bar No. 213082)
                                 BRAND WOODWARD LAW, LP
                                 1808 Park Road NW
                                 Washington, DC  20010
                                 202-996-7447 (telephone)
                                 202-996-0113 (facsimile)
                                 Stanley@BrandWoodwardLaw.com

                                 *Counsel for Defendant Peter K. Navarro*