IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff*, –v.– PETER K. NAVARRO, *Defendant*. | Case No. 1:22-cv-2292 |

## UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR A STAY PENDING APPEAL

### INTRODUCTION

This Court correctly rejected Defendant's efforts to avoid returning presidential records to their rightful owner, the United States. In so doing, the Court determined that it was undisputed that Dr. Navarro was a covered employee under the Presidential Records Act ("PRA"). The United States, therefore, "'retain[s] complete ownership, possession, and control of Presidential records' generated or received by him in the course of assisting with the discharge of the President's official duties." *See* Memorandum Opinion (March 9, 2023) (ECF #16) ("Mem. Op.") at 3, citing 44 U.S.C. §§ 2201(2). The Court dismissed Defendant's argument that the PRA cannot be judicially enforced, or that it provided no timeline by which the United States can take possession of presidential records. The Court also gave short shrift to the "circular[ ]" and "novel" argument that the United States cannot rely on Section 2209 of the PRA because no court has yet interpreted it, as well as to the claim that replevin was either unavailable or was somehow defeated by an inapt "act of production" privilege. Mem Op. at 10-21. In the end, the Court ordered the presidential records in Dr. Navarro's possession to be produced "forthwith." Order and Judgment (March 9, 2023) (ECF #15), a directive with which Defendant did not comply.

Defendant presents no new arguments in his motion to stay. His merits arguments rest primarily on his prior contentions of "statutory ambiguity" and "lack of precedent." Defendant's Motion for Stay (ECF #18) ("Def. Mot.") at 5. The only addition, by implication, is Defendant's suggestion that because the District of Columbia is not a state, but rather a "Federal District," its laws cannot be applied by this Court. Def. Mot. at 1, 3, 6. Such an argument is plainly frivolous. This Court should reject it and reaffirm that Defendant is not likely to succeed on the merits of his position.

Defendant further contends that a stay is warranted because he will be irreparably harmed if he cannot retain records owned by the United States. But that cannot be. Dr. Navarro, as this Court found, has no possessory right to the records; he does not own the records; and he was statutorily obligated to have incorporated them into the White House records system within twenty days of creation, which he concededly did not do. Defendant cannot be irreparably harmed by producing documents he has no right to possess in the first place. Finally, the public interest weighs heavily in favor of the United States having a complete record of every presidential administration, and against individual employees flouting their obligations under the PRA. Accordingly, the Court should deny the motion for a stay pending appeal, and supervise the immediate return of the records already ordered to be produced.

## STANDARD OF REVIEW

A stay pending appeal is an "extraordinary remedy," *Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972, 978 (D.C. Cir. 1985), not issued as "a matter of right." *Nken v. Holder*, 556 U.S. 418, 427 (2009). The moving party must demonstrate that relief is warranted based on consideration of (1) whether the applicant has made a strong showing that he is likely to succeed on the merits of the appeal; (2) whether the applicant will be irreparably harmed absent a stay; (3) whether issuance of a stay will substantially injure other parties; and (4) where the public

interest lies. *Nken*, 566 U.S. at 433-34. When the government is a party, its "harm and the public interest are one and the same, because the government's interest is the public interest." *Id*. at 435; *Pursuing America's Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016).

"It is not enough that the chance of success on the merits [is] better than negligible. Instead, it must be 'substantial[.]'" *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977). Indeed, a party seeking a stay pending appeal must "raise[ ] questions going to the merits so serious, substantial, difficult[,] and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." *Id.* at 844 (internal quotation marks and citation omitted). *See also Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*, 904 F.3d 1014, 1019 (D.C. Cir. 2018) (per curiam) (a movant's failure to satisfy the stringent standard for demonstrating a likelihood of success on the merits is "an arguably fatal flaw for a stay application").

Here, the likelihood of success factor weighs heavily against the entry of a stay pending appeal, as does each of the other factors.

## ARGUMENT

I.   **DEFENDANT IS UNLIKELY TO SUCCEED ON THE MERITS**

Defendant insists that he is likely to succeed on the merits of his appeal because "this matter is a matter of first impression," which alone justifies a stay. Def. Mot. at 9. That argument fails for numerous reasons. As an initial matter, Defendant errs in asserting, *id*.at 2, that matters of first impression are subject to a less rigorous application of the traditional *Nken* factors. Nor did the district court in *McGahn* so hold. That court was describing differences between the stay request before it, which it denied, and a similar request that was granted in an earlier case (*Miers*). The Court noted that, among other factors, the legal issue presented in

3

*Miers* was at the time an issue of first impression. *Comm. on the Judiciary v. McGahn*, 407 F. Supp. 3d 35, 38–39 (D.D.C. 2019). Then-Judge Jackson stressed, however, that with respect to the first *Nken* factor – likelihood of success on the merits – the traditional analysis applied regardless, and that an applicant for a stay must still present an issue that "raises questions going to the merits so serious, substantial, difficult[,] and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." *McGahn*, 407 F. Supp. 3d at 38–39 (D.D.C. 2019), quoting *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d at 844 (D.C. Cir. 1977). Even were this matter one of "first impression" (which it is not, as described *infra*), a question that is neither serious nor substantial would nevertheless fail the first factor.

Defendant next errs in describing the instant case – a replevin action to recover presidential records – as a matter of first impression. Although not a widespread practice for obvious reasons (*ie*., most covered employees comply with their PRA responsibilities without court action), this case is not the first. *See, e.g.*, *United States v. McElvenny,* 02-cv-3027, 2003 WL 1741422, at*1 (S.D.N.Y. Apr. 1, 2003) (seeking a writ of replevin for map of Cuba bearing notations made by President John F. Kennedy during the Cuban Missile Crisis and a collection of President Kennedy's papers regarding federal involvement in the integration of the University of Mississippi). To make this action appear unique, Defendant characterizes it as "the first time ever" that the United States has used replevin to recover presidential records "*through the laws of the District of Columbia – not even a State.*" Def. Mot. at 1 (emphasis added). But to suggest that the laws of the District of Columbia do not constitute state law is truly frivolous, and contrary to both the Federal Rules and centuries of jurisprudence applying the laws of the District of Columbia. *See* Fed. R. Civ. P. 81(d)(2) (defining "state" to include the District of

Columbia."); *Busby v. Elec. Utilities Emps. Union*, 323 U.S. 72, 73–74 (1944) (describing the Act of Feb. 27, 1801, 2 Stat. 103, and early cases relying on District of Columbia law). There is nothing unique about federal courts applying the laws of the District of Columbia where state law appropriately applies.

Finally, despite his best efforts to characterize this matter as a war between the "doctrine of federalism and private property rights," Def. Mot. at 3, the issues presented here are neither about federalism nor private rights.[1] Nor are they "difficult" or "doubtful." *Wash. Metro. Area Transit Comm'n,* 559 F.2d 841 at 843 (D.C. Cir. 1977). Indeed, they are straightforward and easily resolved. There is, for example, no issue of "private property rights." Dr. Navarro freely concedes that under the PRA, ownership of presidential records rests with the United States. *See* Def. Statement of Mat. Facts No. 12 ("12. The United States "retain[s] complete ownership, possession, and control of Presidential records." 44 U.S.C. § 2202. a. **Undisputed").**[2] Nor does Defendant contend that the United States is imposing PRA obligations on a State. And for his part, he does not dispute that he currently retains presidential records, and that he has refused to return them to the United States. Declaration of William J. Bosanko, ¶ 9. What remains are plainly unmeritorious contentions that (1) Defendant need not return the records because the PRA does not expressly provide an enforcement mechanism for their recovery, and (2) the PRA

---

[1] Defendant's reliance on *Alabama Association of Realtors, et al v. Dept. of Health and Human Services, et al.,* 141 S. Ct. 2485 (2021), is inapt. The United States cannot plausibly be said here to have "significantly alter[ed] the balance between federal and state power and the power of the Government over private property." *Alabama Ass'n of Realtors*, 141 S. Ct. at 2489. To the contrary, the United States has petitioned in federal court for a common writ of replevin to recover property it rightfully owns, *see* Mem. Op. at 17-19, and no private property is involved.

[2] Defendant disagrees with the Court's conclusion that there remain no genuine issues of material fact, Def. Mot. at 6, but he never identifies what fact is in dispute, nor does he address the Court's detailed treatment of the parties' statements of material facts not in dispute. Mem. Op. at 6-9.

provides no statutory deadline for recovering documents from former employees who flouted the PRA's deadlines while employed by the White House. Def. Mot. at 4-6.

The Court comprehensively addressed each of these meritless arguments and rejected them. *See* Mem. Op. at 12-16. As the Court succinctly summarized, the "clear record and undisputed fact that [Defendant] created or received the emails on his private email account relating to and while preforming duties for the administration, and neither included them in his official emails nor returned them to NARA upon request, therefore wrongfully detaining them, is the sole relevant inquiry." Mem. Op. at 20. In short, Dr. Navarro posits no argument that the Court has not already correctly rejected. He is therefore unlikely to succeed on the merits of his appeal, a factor that weighs heavily against a stay pending appeal.

## II.  DEFENDANT HAS NOT MADE A SHOWING OF IRREPARABLE HARM

Defendant's motion for stay pending appeal must also be denied because he has not made a showing of irreparable harm. To show the irreparable harm required to obtain a stay, the movant must "demonstrate injury that is 'both certain and great, actual and not theoretical, beyond remediation, and of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm.'" *Soundboard Ass'n v. FTC*, 254 F. Supp. 3d 7, 13 (D.D.C. 2017) (quoting *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015)); *see also Schindler Elevator Corp v. WMATA*, 2021 WL 663191, at *2 (D.D.C. Feb. 19, 2021). Defendant previously failed to make any such showing, *see* Mem. Op. at 15-17 (rejecting purported Fifth Amendment privilege and argument that he can unilaterally delay production), and he has not done so in his request for a stay pending appeal.

Defendant argues, as he did before, that "production of such records could potentially incriminate him in future criminal actions." Def. Mot. at 7. But, as before, he never identifies why such production would incriminate him; "[h]e merely says so." Mem. Op. at 16. Further, Defendant argues that he is irreparably harmed because the Court's order "compels the production of records which cannot thereafter be returned." Def. Mot. at 7. This argument is particularly puzzling, because Dr. Navarro has already conceded that the records at issue are owned solely by the United States, not by him. Accordingly, he has no possessory right to the retain the presidential records, and he cannot possibly be irreparably harmed by relinquishing that which he has no right to possess. And in the unlikely event the court of appeals concludes that Defendant was not obligated to return records that concededly belong to the United States (or was permitted to return them at his leisure), the records could be returned to him. The irreparable harm factor therefore weighs heavily against a stay pending appeal.

### III. THE PUBLIC INTEREST FAVORS THE IMMEDIATE RETURN OF THE PRESIDENTIAL RECORDS

Defendant argues that the United States, and thus the public, is only "minimally affected" by Dr. Navarro retaining the presidential records he admittedly has until "Dr. Navarro's rights are ensured as protected." Def. Mot. at 8. But Defendant has never explained how his rights are affected by returning the records, and the public interest plainly lies in ensuring that the historical record of the prior administration is complete. As the government detailed in the declaration of William J. Bosanko, and which Defendant does not contest, representatives from the National Archives for over a year attempted to work cooperatively with Dr. Navarro, to no avail. And Dr. Navarro freely concedes that he failed to comply with the applicable deadlines for managing presidential records while he worked at the White House – he failed to incorporate the records into his government recordkeeping system within twenty days of their creation, and he failed to provide them to NARA at the end of the administration. Indeed, some 26 months after the end of the prior administration, Defendant has yet to return any of the PRA materials that he has

unlawfully retained. The public interest clearly lies in effectuating the purposes of the PRA and immediately securing the presidential records in Defendant's possession.

Defendant is also incorrect when he argues that the presidential records of the prior administration are currently restricted under the PRA, and therefore only relevant to the public after twelve (now ten) years. Def. Mot. at 8. It is in the public interest that the presidential records be in the custody of the National Archives now for safekeeping, and to ensure that the records are appropriately screened, catalogued, and preserved. Moreover, special requests for access to restricted presidential records can be made at any time during the restricted period, *see* 44 U.S.C. § 2205. Currently, the records in Defendant's possession are missing from the collection of presidential records to which special access requesters are now entitled. That alone is contrary to the public interest.

\* \* \*

As Dr. Navarro can satisfy none of the *Nken* factors necessary to obtain a stay pending appeal, his motion for a stay should be swiftly denied. In addition, the Court should take all necessary steps to compel compliance with the Court's two-week old order that the documents at issue be produced "forthwith,[3]" and that the parties work expeditiously to identify and return additional presidential records Defendant may have.

---

[3] Counsel for the government emailed Defendant's counsel twice in an effort to obtain compliance, once immediately following the Court's order, and again last week.

## CONCLUSION

The United States respectfully requests that Defendant's Motion for Stay Pending Appeal be denied.

Dated:  March 25, 2023

                                      Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

 */s/ Elizabeth J. Shapiro*
ELIZABETH J. SHAPIRO
LEE R. REEVES
Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C.  20044
Telephone: (202) 514-5302
Fax:           (202) 616-8470
E-mail:      elizabeth.shapiro@usdoj.gov

*Counsel for the United States*