N THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | **Case No. 1:22-cv-02292-CKK** |
| **v.** ) | |
| ) | |
| **PETER K. NAVARRO,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**DEFENDANT PETER K NAVARRO'S REPLY IN SUPPORT OF**
**DEFENDANT'S MOTION FOR STAY PENDING APPEAL**

Despite yet another opportunity to apprise this court of the basis for the United States's reliance on the replevin statute of a federal district, the United States cites no precedent to support this position.

The United States has asserted that they have broad powers to compel immediate production of records as defined by the Presidential Records Act ("PRA"), solely because the PRA grants them ownership for recordkeeping purposes of certain documents from a Presidential Administration once that administration has ended. The United Shas also asserted that such broad powers would preclude any sort of litigation over potential immunity or privilege issues that may arise from the creation or reception of the records sought. Despite this assertion, the United States has been entirely unable to identify a single statutory section which evinces the Congressional intent that such broad powers are at their disposal. The reason for that is simple: Congress never intended to give the United States such broad powers in the PRA. Congress wrote no sections which would establish that the United States must have those documents forthwith without determining whether such compelled production would damage the rights of the creator or recipient of such records.

### a. Defendant is Likely to Succeed on the Merits

Despite the arguments put forward in the United States's opposition, Dr. Navarro is likely to succeed on the merits of his appeal. Where issues of first impression are involved, the Court will apply a much less strict standard for considering the factors of stay as outlined in *Nken v. Holder*, 556 U.S. 418 (2009). While the United States has sought to portray *United States v. McElvenny*, 2003 U.S. Dist. LEXIS 4792 (S.D.N.Y. Mar. 31, 2003) as directly on point for this matter, anything beyond a cursory review of that case shows that *McElvenny* is entirely unrelated to the issue at hand in this matter. Beyond *McElvenny*, the United States has cited no cases to support their claim that replevin can be used to achieve their recordkeeping purposes through compelled production under the PRA.

Further, the United States seeks to argue that Supreme Court precedent should be ignored solely because *Alabama Association of Realtors, et al v. Dept. of Health and Human Services, et al.*, 141 S. Ct. 2485 (2021) was a case that is partially factually distinguishable from this present matter. However, this would require the Court to ignore the fact that *Alabama Association of Realtors* builds upon longstanding precedent that the Court should be skeptical whenever the United States seeks to expand the use a long existing statute in new, broad manners that would affect matters of economic or political significance, which is squarely what this action is about.

### i. This is a Case of First Impression, and Cases of First Impression Are Given a Less Rigorous Standard When Reviewed for Stays

As a threshold issue, novel issues are given a less rigorous standard when reviewed for stays, despite the United States's contention otherwise. While all of the factors are still considered, some showing of these factors combined with the novelty of the underlying issues are often enough for the Court to grant stays. *See Ctr. for Int'l Envtl. Law v. Office of the United States Trade Representative*, 240 F. Supp. 2d 21, 22-23 (D.D.C. 2003) ("[A]lthough the Court ultimately did

not agree with defendants' position on the merits, it is evident that defendants have made out a substantial case on the merits. . . [t]hat this Court's decision centered on a novel and admittedly difficult legal question weighs in favor of a stay." (internal quotations and citations omitted)).  Dr. Navarro has made out a substantial case on the merits, and this is a matter of first impression.  As such, a stay pending appeal should be granted.

Whether this issue is a matter of first impression should begin and end with the United States's own language when seeking to justify the lack of PRA precedent.  *See* Motion for Stay, p. 9 (Mar. 22, 2023) (ECF No. 018).  *See also* Combined Reply ISO Motion for Summary Judgment and Opposition to Defendant's Motion to Dismiss, p. 7, p. 7 n.4, (Oct. 4, 2022) (ECF No. 013). ("That no court has yet had occasion to interpret section 2209 [of the PRA] does not change the fact that it is the law, or that this Court is Competent to interpret it in the first instance. . . [j]urisprudence on the PRA is understandably sparse, as administrations have generally cooperated with White House lawyers, White House records professional, and the Archivist to ensure compliance with the PRA since its enactment.").  However, the United States now meekly seeks to rely on *United States v. McElvenny*, 2003 U.S. Dist. LEXIS 4792 (S.D.N.Y. Mar. 31, 2003) to argue that the issue has already been resolved in the past, and thus it is indisputable that replevin is the correct method of recouping allegedly withheld records pursuant to the PRA and thus that this action is not a matter of first impression. However, a review of the *McElvenny* and the PRA give rise to many reasons to doubt this claim.

First, the fact that the United States had one time filed a complaint in replevin to recover a map should not serve to prove that replevin is the clear and correct way to recover presidential records; especially when the court in *McElvenny* completely ignored the replevin claim and instead analyzed whether President Kennedy's deed was a valid instrument under estate law. *See United*

*States v. McElvenny*, 2003 U.S. Dist. LEXIS 4792, at *12 (S.D.N.Y. Mar. 31, 2003) (concluding that, "[t]he Deed is a valid instrument pursuant to which materials relating to the life and work of President Kennedy were donated to the United States and unless the evidence shows otherwise, the Deed applies to the Map and the Meredith Materials. The Government has therefore stated a claim upon which relief may be granted and the Defendants' motion to dismiss is denied.").

Further, the map in *McElvenny* was not even subject to the PRA, as President Kennedy's death preceded the passing of the PRA by almost fifteen years and the map's creation would have preceded the PRA by an even greater period of time; while it is true that the map was found to be government property, this was because President Kennedy's deed clearly left the map to the government and the defendant in *McElvenny* never had any custodial rights over the map.  *Id.* at *10-11 (noting that defendant never had any rights over the map, because, "[t]he donors [who defendant alleged conveyed title to him] did not retain title to materials already donated to the Government.").  This situation is wholly distinguishable from Dr. Navarro's, because, as either the rightful recipient or creator of any records under the PRA, he was the rightful custodian of the records upon their receipt or creation.

Finally, *McElvenny* was decided eleven years before Congress amended the PRA to include 44 U.S.C. § 2209, the section which applies to the use of electronic mail accounts and whether such materials can be considered presidential records.  *See generally id.* ("March 31, 2003, Decided").  *See also* 44 U.S.C. § 2209 ("Added Pub. L. 113–187, §2(e)(1), Nov. 26, 2014, 128 Stat. 2006.").  A significant portion of the United States's action against Dr. Navarro is based upon § 2209, and they now argue that *McElvenny* would establish that replevin is the clear way to enforce § 2209 when the case predates the existence of § 2209.  Whether replevin is the right way

to enforce § 2209, if there even is any enforcement possible under § 2209, cannot be established from *McElvenny*.

The United States seeks to portray Dr. Navarro's position as one that is in opposition to Fed. R. Civ. P. 81 because it notes that the District of Columbia is a federal district.  However, this misconstrues the actual issue at hand: whether <u>any</u> state's law can be used to broadly enforce a federal statute when Congress did not clearly provide for its use in the statute.  The United States has cited no case which would establish this claim, and for the reason contained herein *McElvenny* is clearly distinguishable from the matter at hand.

### ii.  The Supreme Court has a Clear and Longstanding Principle Limiting Agencies from Expanding Their Power through Statutory Ambiguity

The United States in a footnote seeks to assert that *Alabama Association of Realtors, et al v. Dept. of Health and Human Services, et al.* does not apply here, because it cannot be argued that the United States has, "significantly alter[ed] the balance between federal and state power and the power of the Government over private property."  United States Opp., p. 5 n.1 (Mar. 25, 2023) (ECF No. 020).  However, this attempted distinction does not change the fact that the principle from *Alabama Association of Realtors* is a longstanding one and one that the Supreme Court and subsequent interpretation in this Circuit have noted means that, "courts should not lightly presume congressional intent to implicitly delegate decisions of major economic or political significance to agencies[,]" where a longstanding statute has never been used in such a way.  *See Merck & Co., Inc. v. United States HHS*, 962 F.3d 531, 540 (D.C. Cir. 2020) (citing *Loving v. IRS*, 742 F.3d 1013, 1021 (D.C. Cir. 2014) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529, U.S. 120, 133 (2000), *superseded by statute*)).  *See also Utility Air Regulatory Grp. v. EPA*, 573 U.S. 302, 324 (2014) ("When an agency claims to discover in a

long-extant statute an unheralded power to regulate a significant portion of the American economy, we typically greet its announcement with a measure of skepticism.  We expect Congress to speak clearly if it wishes to assign an agency decisions of vast economic and political significance") (internal citation omitted) (quoting *Brown & Williamson*, 529 U.S. at 159-60).

Here, the PRA has been in existence for forty-four years, and has been amended at least once.  Nowhere in the statute has Congress given the United States power to use replevin, or any other manner, to recover PRA records.  Never in the forty-four years of the statute's existence has an agency of the United States sought to use the PRA in such a way to force the production of records without allowing for the creator of such records to raise potential privileges that may be implicated by producing such documents, until now.  As such, this Court should tread extremely carefully in now finding that statutory ambiguity clearly means that Congress intended to give an agency of the United States such broad powers through the PRA.

As demonstrated herein, Dr. Navarro has laid out a substantial claim on the merits and also has demonstrated that this matter concerns novel legal issues.  As such, this court should grant Dr. Navarro's motion for a stay.

**b.  Defendant is Likely to Suffer Irreparable Harm**

The factors of likeliness of success on the merits and the likeliness of irreparable harm are considered together: "[P]robability of success is inversely proportional to the degree of irreparable injury evidenced.  A stay may be granted with either a high probability of success and some injury, or *vice versa*.".  *See Cuomo v. United States Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985).

6

Ultimately, the United States seeks to argue that Dr. Navarro is unlikely to suffer irreparable harm if he is compelled to produce the documents.  However, the fact remains that Dr. Navarro reasonably believes that the United States cannot compel the production of such records under *United States v. Hubbell* and its progeny because of the act-of-production privilege.  The irreparable harm would be that any of Dr. Navarro's confidentiality will be lost prior to the ability to appeal the ruling if he is made to produce any records before he may appeal.  *See WP Co. LLC v. United States SBA*, 2020 U.S. Dist. LEXIS 221447, at *6-7 (D.D.C. Nov. 24, 2020) ("In other words, once the information has been turned over, the bell cannot be unrung on appeal.") (citing *Ctr. for Int'l Envtl. Law v. Office of the United States Trade Representative*, 240 F. Supp. 2d 21, 22 (D.D.C. 2003)).  If Dr. Navarro were compelled to produce any records under the PRA that may be in his possession, they will be publicly accessible through the Freedom of Information Act ("FOIA"), and likely will also be shared more freely within the United States.  If not, the United States still can publicly access them through the FOIA process as well.  Dr. Navarro's main concern is that any materials that may be produced because of this matter will be used in the other United States inquiries currently proceeding against him.

### c.  The Public Interest Will Be Minimally Affected by a Stay

The United States seeks to argue that the public has a great interest in retrieving these documents forthwith, implying that the only way to ensure the "safekeeping" of such records is to turn them over to the United States forthwith.  United States Opp., p. 7-8.  However, the United States presents no evidence to establish that the records are likely to be lost if their production is delayed until after this matter is appealed, and Dr. Navarro has no intent to destroy any records that may be in his possession.  As the United States will receive these records once the issues

relating to Dr. Navarro's potential privileges are resolved, the public interest is minimally affected by staying these proceedings.

## CONCLUSION

For the reasons contained herein, Dr. Navarro respectfully requests that this Court grant his motion for stay pending appeal.

Dated: March 26, 2023                    Respectfully submitted,

                                         */s/ Stanley E. Woodward*

                                         Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
                                         Stan M. Brand (D.C. Bar No. 213082)
                                         BRAND WOODWARD LAW, LP
                                         1808 Park Road NW
                                         Washington, DC  20010
                                         202-996-7447 (telephone)
                                         202-996-0113 (facsimile)
                                         Stanley@BrandWoodwardLaw.com

                                         *Counsel for Defendant Peter K. Navarro*

## CERTIFICATE OF SERVICE

On March 26, 2023, the undersigned hereby certifies that a true and correct copy of the

foregoing was electronically filed and served via the CM/ECF system, which will automatically

send electronic notification of such filing to all registered parties.

*/s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD LAW, LP
1808 Park Road, Northwest
Washington, DC  20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com