# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff,* | |
| —v.— | Case No. 1:22-cv-2292 |
| PETER K. NAVARRO, | |
| *Defendant.* | |

## STATUS REPORT[1]

### Plaintiff's Position

On August 3, 2022, Plaintiff initiated this lawsuit seeking the return of Presidential Records Act ("PRA") materials belonging to the government that were in Defendant's possession. *See* Compl., ECF No. 1. On March 9, 2023, the Court granted summary judgment in favor of Plaintiff, ordering the return of certain PRA materials forthwith, and ordering the parties to coordinate regarding a schedule for the production of the remaining PRA materials. On April 8, 2023, the parties filed a Joint Status Report setting out a proposed schedule.

By Minute Order on April 12, 2023, this Court ordered, *inter alia*, that

[T]he Court adopts the parties' proposed schedule in their 24 Joint Status Report. Defendant shall complete all searches for Presidential records on or before May 8, 2023, and the parties shall file another joint status report on or before May 15, 2023 proposing a schedule and deadlines setting forth the timing and manner by which Defendant will produce the remaining Presidential records in his possession.

---

[1] The Court's April 12, 2023 Minute Order directed the parties to file a joint status report proposing a schedule and deadlines for production; however, as explained in detail in this filing, the parties are at an impasse. Accordingly, Plaintiff has drafted its own position statement. Earlier today, Plaintiff's counsel sent an email to Defendant's counsel regarding whether to file a combined status report or separate reports and asking for a response by 6:00pm. As of the time of this filing, Defendant's counsel had not responded to that email.

Apr. 12, 2023, Minute Order.  Notwithstanding this Court's orders, Defendant continues to thwart the United States' ongoing efforts to effectuate this Court's March 9, 2023, Judgment and Order and several subsequent, related production orders.  By his own admission, Defendant has failed to comply with this Court's order that he complete all searches for Presidential records on or before May 8, 2023. Moreover, the limited information available to Plaintiff suggests that the search/searches that have been conducted to date are woefully underinclusive.   Based on the information provided by Defendant's counsel, it appears that—contrary to the process agreed to by the parties—Defendant has conducted a single search for emails exchanged between the ProtonMail account identified in the Complaint and email addresses ending in .gov or .mil.[2]  Defendant had to know that this search was underinclusive, as his own document production included a substantial number of PRA communications for which neither the sender nor recipient had a .gov or .mil email domain.  It also fails to comply with the search procedures set out in the parties' Joint Status Report, which explicitly contemplated additional searches.    Moreover, Defendant's document production revealed that Defendant used at least four personal email accounts[3] to conduct official business; however, Defendant has offered no indication that each of these email accounts has been searched.  To the contrary, when Plaintiff reached out last week raising these various concerns and seeking additional information about the nature and extent of Defendant's searches, Defendant expressly refused to provide such information.  Instead, Defendant insisted that it was Plaintiff's obligation to propose searches, despite Defendant's earlier commitment to search all email, and his acknowledgment that any searches proposed by Plaintiff were preliminary and non-exclusive.

Given Defendant's apparently inadequate search and refusal to provide further information, the Court should impose a strict schedule and deadlines by which Defendant will produce the remaining Presidential records in his possession.  Unless and until Defendant explains the scope and

---

[2] Defendant has now produced the "the already identified 200-250 Presidential records in his possession," which were located during a search process conducted by Defendant's prior counsel.
[3] In addition to the ProtonMail account referenced in the Complaint, the Government is now aware that Dr. Navarro used at least three others: a second ProtonMail account, a Gmail account, and a .com account.  Plaintiff can provide the addresses to the Court upon request.

methodology of any search(es) he performed, Plaintiff will be unable to ascertain whether Defendant has complied with this Court's March 9, 2023, Judgment and Order or subsequent production orders. Accordingly, Plaintiff respectfully requests that the Court enter an order requiring Defendant to provide the Court with additional information about the searches that he has conducted, the accounts on which he conducted official business, and a plan for an adequate search of those accounts by May 24, 2023.   Plaintiff proposes responding to that filing by May 31, 2023.

In support of this request, Plaintiff provides the following information:

1. On April 8, 2023, pursuant to this Court's order, the parties filed a Joint Status Report. In that Joint Status Report, Defendant represented that he "ha[d] begun the process of conducting searches to capture *all* Presidential Records Act (PRA) records in his possession."  Jt. Status Report ¶ 1, ECF No. 24 (emphasis added).

2. Specifically, Defendant represented that would search "all email accounts on which he conducted official business, which includes, but is not necessarily limited to, his ProtonMail account." *Id.*

3. Defendant further represented that these searches would involve, at minimum, a three-step process. In the JSR, Defendant represented that he would "first search his email for all correspondence with a .gov or .mil domain," and would then "use these results to conduct a search for any emails with those individuals' personal email accounts, as well as a search of text messages and chats (if any exist)." *Id.* ¶ 2. Defendant further represented that he would "also search for all electronic messages (and/or accompanying attachments) that he has sent to or received from anyone that relate to his official duties." *Id.* ¶ 3.

4. The parties agreed that Defendant would complete "*all* searches for PRA material by May 8, 2023." *Id.* ¶ 4 (emphasis added).

5. On April 12, 2023, this Court entered an order adopting the parties' proposed schedule. In particular, the Court ordered that "Defendant shall complete *all* searches for Presidential records on or before May 8, 2023."  Apr. 12, 2023 Minute Order (emphasis added). The Court further ordered the parties to file another joint status report on or before May 15, 2023 "proposing a schedule

and deadlines setting forth the timing and manner by which Defendant will produce the remaining Presidential records in his possession." *Id.*

6.      On May 8, 2023—the date on which Defendant was ordered to have conducted all searches for PRA material—Defendant's counsel sent an email to Plaintiff's counsel regarding the status of its searches. *See* May 8, 2023, Email from S. Woodward to L. Reeves, attached hereto as Exhibit A. In that email, Defendant's counsel represented the following:

> We have identified roughly another 800 records exchanged with a ".gov" or a ".mil" account that we are reviewing. We would propose a rolling production of roughly 200 emails a week for the next month to review and produce these records. We will also agree to conduct any targeted searches that you all request based on what you see in these emails (e.g., a search for a specific recipient that may not utilize a ".gov" or ".mil" email account but with whom we see Dr. Navarro corresponding).

Ex. A.

7.      Although the email provided limited information regarding Defendant's searches for PRA material, it suggested that Defendant had not completed the searches described in the Joint Status Report, let alone completed "all searches" for Presidential records. At most, it appears that Defendant has conducted only the first step of the process described in the parties' JSR—i.e., a search for correspondence with a .gov or .mil domain. Based on this email, it does not appear that Defendant took the next step of "us[ing] these results to conduct a search for any emails with those individuals' personal email accounts, as well as a search of text messages and chats (if any exist)," or that Defendant took any further steps to "search for all electronic messages (and/or accompanying attachments) that he has sent to or received from anyone that relate to his official duties." Additionally, the email provided no indication that Defendant searched "all email accounts on which he conducted official business."

8.      On May 10, 2023, Plaintiff's counsel sent an email seeking additional information regarding the searches conducted by Defendant. *See* May 10, 2023, Email from L. Reeves to S. Woodward, attached hereto as Exhibit B. In that email, Plaintiff's counsel explained that, based on the information provided, it appeared that Defendant's searches were "not adequate or reasonably calculated to capture all PRA material in [Defendant's] possession." *Id.* Thus, Plaintiff's counsel

explained that Defendant was not in compliance with the Court's minute order, asked questions aimed at assessing the extent of Defendant's compliance, and asked how Defendant's counsel planned to remedy the concerns outlined in the email.  *Id.*

9.      On May 11, 2023, Defendant's counsel responded.  *See* May 11, 2023, Email from S. Woodward to L. Reeves, attached hereto as Exhibit C.  The email appears to confirm that the only search conducted by Defendant was a search for correspondence with a .gov or .mil email domain, that Defendant made no effort to conduct additional searches aimed at identifying PRA material, and that Defendant has no intention of initiating additional searches on his own:

> [W]ith respect to the Court's April 12, 2023, Minute Order regarding our obligation to complete all "searches" by May 8, 2023, your Proposed Order, which the Court adopted, required us to search for all correspondence with a .gov or a .mil domain.  We have done that.  Any suggestion that our searches were not adequate or reasonably calculated to capture correspondence the subject of the PRA strains credulity given that you proposed the search we performed.

Ex. C; *see also id.* "As explained in our emails to you, and which you appear to acknowledge above, at your request we searched for any correspondence with a user/custodian that had a .mil or a .gov account. If you have another search you believe would better identify records subject to the PRA, please let us know and we'll run it.").

10.     It is not clear from correspondence to date whether Defendant searched "all email accounts on which he conducted official business," as the parties agreed in the Joint Status Report.

11.     Finally, Defendant's counsel refused to provide any of the information sought by the Plaintiff to assess the adequacy of Defendant's searches, insisting that requesting such information amounted to an unreasonable search under the Fourth Amendment.  *See* Ex. C.

12.     Although Plaintiff has only limited information regarding the searches conducted by Defendant for PRA material, it appears that such searches were woefully underinclusive.  Neither the Joint Status Report nor the Court's order indicated that Defendant need only search one email account for correspondence with a .gov or .mil domain.  Rather, the JSR (and by extension the Court's order) explicitly contemplated that Defendant would "*first* search . . . for all correspondence with a .gov or .mil domain," Jt. Status Report ¶ 2 (emphasis added) and would then use those search results to

conduct further searches for correspondence with those individuals, in addition to conducting other searches as needed for "all electronic messages (and/or accompanying attachments) that he has sent to or received from anyone that relate to his official duties," *id.* ¶ 3. In other words, Defendant was obligated to conduct searches aimed at capturing *all* PRA material in his possession, not simply those emails including a .gov or .mil email address.

13.     As Plaintiff's counsel noted in the May 10, 2023 email, the PRA material produced by Defendant to date indicates that a search for .gov and .mil email addresses is almost certainly underinclusive. Of the emails that Defendant has previously identified as PRA material and produced to the National Archives, 40 emails did not include a sender or recipient with a .gov or .mil email address. Thus, Defendant's domain-based search would have missed a significant portion of the PRA material identified to date. Additionally, the PRA materials to date indicate that Defendant used at least four non-official email accounts to conduct official business during his government tenure. Thus, to the extent that Defendant has only searched the ProtonMail account listed in the Complaint, he has not complied with his obligations under the Court's minute order.

14.     Defendant's counsel's offer to "conduct any targeted searches that [Plaintiff] request[s] based on what [Plaintiff] see[s] in these emails" does not excuse Defendant's failure to conduct an adequate search. As an initial matter, Defendant's proposal came much too late. The Court ordered Defendant to conduct *all* searches by May 8, 2023—not to conduct a cursory initial search by May 8 and then to conduct subsequent searches at some indeterminate future time. Plaintiff has been seeking the return of these PRA materials for nearly a year and a half, and Defendant has continuously engaged in dilatory tactics to avoid his obligations under the PRA. Defendant should not be permitted to stall further by flouting the agreed-upon process and this Court's order.

15.     Setting aside timing considerations, it is Defendant's responsibility to craft searches that will uncover the PRA materials in his possession. Only Defendant knows which and how many personal email accounts he may have used to conduct official business, as well as with whom he may have corresponded and on what topics. Defendant agreed to search "for all electronic messages (and/or accompanying attachments) that he has sent to or received from anyone that relate to his

official duties," and it is his responsibility to conduct searches that will identify such information, or to review all his personal email to determine which are related to official White House business.[4]

16.    In view of Defendant's failure to complete his searches for PRA material by May 8, 2023, the Court should impose a strict schedule at this time.

17.    Plaintiff respectfully requests that the Court order Defendant, by May 24, 2023, to provide the Court and Plaintiff with a description of the search(es) conducted to date for PRA material, including, but not limited to identifying the email account(s) searched and confirming whether those email accounts comprise the full universe of Defendant's personal accounts that were used to conduct official business. Defendant should also identify a plan, including a timetable, to search those accounts to identify and produce PRA records.

18.    Once Defendant has provided such information, Plaintiff proposes responding by May 31, 2023.


Dated:  May 15, 2023                                    Respectfully submitted,

                                                       BRIAN M. BOYNTON
                                                       Principal Deputy Assistant Attorney
                                                       General

                                                       BRIAN D. NETTER
                                                       Deputy Assistant Attorney General

                                                       ELIZABETH J. SHAPIRO
                                                       Deputy Branch Director
                                                       Federal Programs Branch

                                                       /s/  *Alexandra R. Saslaw*
                                                       LEE REEVES
                                                       ALEXANDRA SASLAW
                                                       Trial Attorneys
                                                       U.S. Department of Justice

---

[4] Of course, Plaintiff reserves the right to challenge the adequacy of such searches in the event that they do not appear reasonably calculated to identify PRA material in Defendant's possession.

Civil Division, Federal Programs
Branch
1100 L Street NW
Washington, DC 20005
Tel: (202) 514-4520
Email: alexandra.r.saslaw@usdoj.gov

*Counsel for Plaintiff*