UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>–v.–<br><br>PETER K. NAVARRO,<br><br>*Defendant*. | Case No. 1:22-cv-2292 |

## MOTION TO ENFORCE

For the past eighteen months, the United States has sought to retrieve from Defendant Peter K. Navarro its rightful property, in the form of Presidential Records sent and received on Defendant's personal email account(s). The National Archives and Records Administration ("NARA") first contacted Defendant regarding the return of these records in December 2021. Defendant ignored NARA's attempts to contact him for six months until he was notified that the Department of Justice was considering bringing a civil action for the recovery of the wrongfully withheld records. After several weeks of negotiation, Defendant refused to turn over the records in his possession. Shortly thereafter, the United States initiated this litigation.

On September 26, 2022, the United States moved for summary judgment in this matter. *See* Motion for Summary Judgment, ECF No. 7. The Court granted that motion on March 9, 2023, ordering Dr. Navarro to return the wrongfully withheld documents to the United States. *See generally* Mem. Opinion (March 9, 2023), ECF No. 16. The Court issued an order that (among other things) required the parties to meet and confer regarding search terms and methodology and required that "all Presidential records identified thereby shall be expeditiously produced." Order & Judgment, ECF No. 15. The parties conferred and filed a Joint Status Report reflecting a purported agreement regarding the scope and timing of Defendant's search for Presidential records. *See* Jt. Status Report,

ECF No. 24.  The Court adopted the parties' agreement in an April 12, 2023 Minute Order.  Yet when the deadline came for Defendant to complete its searches, Defendant revealed that he had not completed the agreed-upon searches, and that he did not intend to do so.  *See generally* Status Report, ECF No. 27.

Thus, on May 19, 2023, the Court entered yet another order to enforce its earlier judgment, requiring Defendant to "search for and identify all Presidential records generated across any and all of his personal accounts on which he transacted official business."  Order 2, ECF No. 28.  The Court further specified that, at a minimum, Defendant must search (1) "the names of officials with email addresses ending in .gov or .mil that have already been produced as Presidential records to date," and (2) "subject matters that relate to his official duties that have appeared in the Presidential records to date."  *Id.*  The Court's order makes clear that these two searches are the bare minimum, and that merely conducting these searches would not necessarily satisfy Defendant's obligations under the order, which requires Defendant to search for and identify *all* Presidential records sent or received on his personal email account(s).

On May 25, 2023, Defendant transmitted 211 additional records to the United States.  On May 27, 2023, Defendant filed a status report concerning his compliance with the Court's order.  *See* Second Status Report, ECF No. 29.  Although that filing stated that "Dr. Navarro reasonably believes" these 211 records "to constitute the remainder of such Presidential Records within his possession, custody, or control," the filing does not provide sufficient information for the United States or the Court to conclude whether Defendant has finally complied with this Court's order.

Defendant's filing merely parrots the language of the Court's May 19 order, stating that Defendant "search[ed] his ProtonMail account metadata for, 'the names of officials with email addresses ending in .gov or .mil that have already been produced as presidential records to date'" and to search for "'subject matters that relate to his official duties that have appeared in Presidential Records produced to date.'"  *Id.* ¶ 1.  Defendant did not provide a list of the names or subject matters searched, and therefore it is not possible to determine whether the searches conducted actually

encompass the full universe of names or subject matters at issue—let alone whether they seem tailored to capture all PRA material in Defendant's possession.

While the Government cannot assess the adequacy of Defendant's searches without knowing what searches were conducted, the limited information available raises concerns.

First, Defendant's filing suggests that, at most, he conducted the two searches specifically described by the Court—notwithstanding the Court's instruction to search for "all Presidential records generated across any and all of his personal accounts," including records that might fall outside of the searches expressly described in the Court's order. Defendant's filing offers no reassurance that these searches were sufficient to capture *all* PRA materials, thus raising concerns that Defendant might once again be misunderstanding this Court's order to require only specific narrow searches, rather than searches aimed at adequately capturing PRA materials in his possession. For example, nothing in Defendant's filing addresses whether he conducted official business through emails with individuals whose names did not show up in the initial production of Presidential records; if he did, then additional searches likely would be needed to capture those emails.

Second, the small number of records produced to the Government raises questions about the adequacy of Defendant's search and review procedures. When Defendant searched the ProtonMail account for emails and attachments exchanged with .gov or .mil email domains, he purportedly identified approximately 800 such records. Presumably, Defendant's further searches revealed additional emails and attachments that might be Presidential records. Yet Defendant produced only 211 records to the United States. Of course, some of the documents initially identified by the Defendant might not be Presidential records; however, the steep decrease between the number of records initially identified and the number of records produced raises questions regarding the shortfall. Again, it bears repeating that only Defendant knows the nature and extent of his searches, and his continued refusal to provide that information to the United States despite multiple requests has thwarted the Government's ability to assess whether Defendant has in fact complied with this Court's production orders.

In an effort to resolve this issue without further involvement of the Court, undersigned counsel contacted Defendant's counsel on May 30, 2023, requesting that Defendant provide the list of search terms used to search Defendant's email accounts. *See* Exhibit A (May 30, 2023 Email from L. Reeves to S. Woodward). Undersigned counsel further requested that Defendant confirm that he had searched, at minimum, the four personal email accounts that appeared in the previously produced records,[1] and that Defendant explain the discrepancy between the number of records identified by the search and the (much smaller) number produced. *Id.* In response, Defendant's counsel indicated a willingness to work to resolve this issue but expressed an unwillingness to provide the requested information in advance of the Court's deadline to file a motion to enforce. The Government was willing to seek an extension from this Court, provided that Defendant's counsel agreed to share the requested information by Friday, June 2, 2023. However, Defendant's counsel represented that he could not commit to providing the requested information even with an extension of time, and further invited undersigned counsel to provide "case law or other authority that would serve the basis for an order requiring the disclosure of information such as search terms." *See* Ex. A (May 30, 2023 Email from S. Woodward to L. Reeves).[2]

Because the Government continues to lack the information necessary to assess Defendant's compliance with the Court's orders, and because Defendant has been unwilling to provide such information to date, it appears that the Court's intervention is once again necessary. Accordingly, the Government respectfully requests that the Court order Defendant to provide a declaration detailing the searches conducted to date in connection with the Court's March 9 order and all subsequent

---

[1] Defendant's filing complained that the Government had not identified these specific accounts; however, Defendant never asked the Government to identify the accounts at issue, and he appears to have understood which accounts were at issue given that he purports to have conducted searches of these accounts. *See* Second Status Report ¶ 2. Nevertheless, the Government expressly identified these accounts in its May 30, 2023 email to Defendant. The Government has redacted the list of accounts in question out of respect for Defendant's privacy; however, it can provide the list to the Court if necessary.

[2] Defendant's counsel also stated that by the morning of May 31 "we'll provide as much information as we can regarding your requests as well as proposed next[] steps for ensuring that all PRA records have been produced." *See* Exhibit A. As of the time of this filing, the United States has not received anything.

orders. In particular, the Government requests that the Court order Defendant to list both the search terms used and the metadata fields searched. The Government further requests that the Court order Defendant to confirm that he searched each of the four non-official email accounts that appeared in the earlier production of Presidential records, as well as any other non-official email account that might contain Presidential records. Finally, the Government requests that the Court order Defendant to certify the methodology that he used and explain why these searches are reasonably calculated to capture *all* PRA materials in his possession.

Given the apparent deficiencies in Defendant's searches, and given the course of events to date, the United States respectfully requests this this Court "effectuat[e] [its] judgment [by issuing] a show-cause order" requiring Defendant to explain why he has complied with this Court's various orders regarding his search and production obligations. *See* May 19, 2023 Order 1-2, ECF No. 28.[3] Depending on Defendant's response, the Government defers to the Court on how to proceed further, including the possibility of further briefing regarding the adequacy of Defendant's search(es) and productions.

Dated: May 31, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIAN D. NETTER
Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director
Federal Programs Branch

---

[3] The United States believes that Defendant should provide all email accounts that he searched and the search terms and parameters that he used. The United States does not object to Defendant providing this information under seal.

        /s/ *Lee Reeves*
LEE REEVES
ALEXANDRA SASLAW
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Tel: (202) 616-0773
Email: lee.reeves2@usdoj.gov

*Counsel for Plaintiff*