IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) ) ) |
| v. | ) Case No. 1:22-cv-02292-CKK ) ) |
| PETER K. NAVARRO, | ) ) |
| Defendant. | ) ) ) |

### RESPONSE TO MOTION TO ENFORCE

Not one document. Despite now having been provided hundreds of emails exchanged with Dr. Navarro's personal email accounts and despite having access to thousands, likely tens of thousands, of emails exchanged with his official White House email account, the government has failed to identify a single record it believes Dr. Navarro has failed to produce in response to this Court's Order. Why? Were Dr. Navarro truly non-compliant with the Court's Order so as to warrant additional admonishment from this Court, one would think the government would come before the Court with examples – or even just one example – of an email that Dr. Navarro failed to produce. Instead, the government waxes poetic about its inability to know whether all Dr. Navarro's emails have been produced and demands this Court compel Dr. Navarro to disclose information protected by the attorney-client privilege concerning how emails were selected and identified in an effort to comply with the Court's Order.

Moreover, the government does so despite the good faith effort of defense counsel to work with the government to assure it that all Presidential Records have been produced. Yes, there is a history in this case – both the government and perhaps the Court may doubt Dr. Navarro's intent to fully comply with the Court's Order insofar as he initially refused to voluntarily provide such records to the government. That Dr. Navarro challenged the

1

government's proposed approach to reclaiming Presidential Records and subsequently sought appellate relief from this Court's denial of such a challenge is not something this Court should now hold against him, however. Although Dr. Navarro and his counsel respectfully disagreed with the legal approach taken by the government to reclaim Presidential Records, the undersigned counsel cannot ethically advise Dr. Navarro to "thwart" the lawful Order of this Court. Now, instead of working with defense counsel, the government runs to the Court to whine that Dr. Navarro won't simply capitulate to any and all of its demands – seemingly nothing short of production of the entirety of Dr. Navarro's personal emails will satisfy the government that Dr. Navarro has produced all Presidential Records pursuant to this Court's Order. Put simply, the government's complaints about the sufficiency of Dr. Navarro's production of records evidence a complete lack of understanding of how eDiscovery productions are rendered. For the reasons that follow, neither the Presidential Records Act nor the Replevin statute upon which this Court Ordered the return of Presidential Records require the disclosure of methodologies derived by Dr. Navarro in consultation with his counsel to the government. Instead, a more common approach to remedying potential discovery violations – the kind of "thinking outside the box" referenced by defense counsel in his correspondence with the government – would be to conduct a random sample review of Dr. Navarro's personal email.

This Court should not continue to allow the government to manipulate it with its gross exaggerations and ignorance of eDiscovery reviews. Rather, defense counsel stands ready to do whatever is necessary to satisfy the Court that Dr. Navarro has fully complied with the Court's Order. Dr. Navarro will address each of the government's gripes seriatim.

First, the government contends that Dr. Navarro's Second Status Report (May 27, 2023) (ECF No. 29), suggests that Dr. Navarro, "at most, . . . conducted the two searches specifically

described by the Court." That Dr. Navarro's Second Status Report, "parrots the language of the Court's May 19 order[]" is a non sequitur. The Court required Dr. Navarro to confirm compliance with its Order – to use language other than the Court's Order would suggest that Dr. Navarro had not, in fact, complied with the same.

Second, the government contends that, "the small number of records produced to the Government raises questions about the adequacy of Defendant's search and review procedures." Motion at 30 (May 31, 2023) (ECF No. 30). Not so. When the government initially requested Dr. Navarro utilize specific search terms to identify potential Presidential Records, those search terms yielded roughly 1,700 records that had to be reviewed. Following a review of those records – again, using the search terms identified by *the government* – Dr. Navarro identified only 250 that he concluded were in fact Presidential Records. Thus, a mere 15% of the records responsive to the search terms *generated by the government* were actually determined to be Presidential Records by Dr. Navarro.

After running an additional search as requested by *the government*, Dr. Navarro identified roughly 800 records that had to be reviewed. Dr. Navarro's production of 211 Presidential Records exceeds the rate of responsiveness established by the searches initially requested by the government (26% compared with 15%). Clearly the majority of those records that *the government's* requested searches identify yield only a small number of records that are actually Presidential Records. The government's suggestion that, "the steep decrease between the number of records initially identified and the number of records produced," is wholly detached from reality. eDiscovery searches reveal non-responsive documents.[1]

---

[1] By the government's own admission, it did not identify other email accounts from which it believes there may be records until May 30, 2023, despite a specific request for identification of same prior to the filing of the May 15, 2023 Status Report. (Mar. 15, 2023) (ECF No. 26-3) ("If you're aware of any email accounts you have cause to

3

Third, the government complains that Dr. Navarro is unwilling to provide it with his methodology for identifying Presidential Records.  At the outset, Dr. Navarro notes that the Court has not required him to divulge his methodology for identifying Presidential Records, including any search terms he may have run.  To do so, would force Dr. Navarro to divulge the results of necessarily privileged communications he had with his counsel.  The chilling effect of this intrusion is in direct contradiction with the purpose of the privilege:  "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

Presumably the Court recognized this limitation in its acknowledgement that, "Plaintiff has not. . . requested that Defendant produce *personal* records in Defendant's possession[.]" Order at 2 (May 19, 2023) (ECF No. 028).[2]  Counsel for Dr. Navarro also notes that the National Archives and Records Administration has been handling the administration of the Presidential Records Act since 1978, or almost forty-five (45) years.  The suggestion that the government has absolutely no means of providing terms or parameters which might identify additional Presidential Records when it has already administered the archival of the records of at least six (6) prior presidential administrations is incredulous.  The assertion is especially suspect in this

---

believe contains presidential records covered by the PRA, *please identify the same and we'll collect and search it.*") (emphasis added).  *Compare* Motion at 4 n.1 (May 31, 2023) (ECF No. 30) ("[T]he [g]overnment expressly identified these accounts in its *May 30, 2023 email to Defendant*.") (emphasis added).  Despite the Eleventh Hour identification of such accounts, Dr. Navarro continues to reasonably believe that he has identified all Presidential Records and again notes that the government has yet to identify a single Presidential Record it believes Dr. Navarro failed to produce.

[2] Further, counsel for Dr. Navarro notes that the term "personal records" as defined under the Act is a fairly broad definition.  *See* 44 U.S.C. § 2201(3)(A)-(C). As the Court and the government are aware, the email account at issue is ultimately a personal email account that used by a former member of a Presidential administration before, during, and after his tenure in the Executive Branch; it should be of no surprise that such email account would contain, primarily, personal records that may initially be responsive to terms that could also lead to the discovery of Presidential Records.

action because the government seems to have some sort of basis for their claims that Dr. Navarro still possesses presidential records as defined under the Act without identifying a single record it believes to be in Dr. Navarro's possession but that Dr. Navarro has failed to produce.

## CONCLUSION

As provided in Dr. Navarro's Second Status Report, Dr. Navarro welcomes any and all searches the Court concludes reasonable to identify Presidential Records in Dr. Navarro's. In addition, Dr. Navarro is also willing to conduct a review of a random sample of Dr. Navarro's personal email the results of which will identify whether a) any Presidential Records in fact remain in Dr. Navarro's possession and b) the statistical significance (e.g., what percentage of documents reviewed constitute Presidential Records) of any such records identified as Presidential Records.[3] Should the Court conclude additional searches are warranted, Dr. Navarro will have his eDiscovery vendor draft a proposal for such a review, which he will share with the Court and the government, and only requests a reasonable amount of time to perform the search and review of the results of the same.

[SIGNATURE ON NEXT PAGE]

---

[3] Random sampling has long been the preferred method for resolving eDiscovery disputes in civil litigation. *See* EDRM, Statistical Sampling Applied to Electronic Discovery (Feb. 18, 2015), https://edrm.net/resources/project-guides/edrm-statistical-sampling-applied-to-electronic-discovery/ (last visited June 1, 2023); The Sedona Conference, Commentary on Achieving Quality in the E-Discovery Process, The Sedona Conference Journal at (2014), *available at* https://thesedonaconference.org/sites/default/files/publications/265-304%20Archieving%20Quality_0.pdf ("In the e-discovery context, statistical sampling can serve as a check on the effectiveness of search and review efforts at identifying responsive information and correctly coding documents, whether the efforts are manual or technology-assisted. A party could identify a random sample of documents that the review method did not identify as potentially responsive and review for responsiveness. By doing so, the party can obtain an estimate of the number of responsive documents remaining in the set of documents that were not selected for further review. Based on the results of such testing, the producing party can take informed actions to improve its review process to close the gap between what was identified as responsive and what was actually responsive.").

Dated: June 1, 2023    Respectfully submitted,

            */s/ Stanley E. Woodward, Jr.*
          Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
          Stan M. Brand (D.C. Bar No. 213082)
          BRAND WOODWARD LAW, LP
          1808 Park Road NW
          Washington, DC  20010
          202-996-7447 (telephone)
          202-996-0113 (facsimile)
          Stanley@BrandWoodwardLaw.com

          *Counsel for Defendant Dr. Peter K. Navarro*

## **CERTIFICATE OF SERVICE**

On June 1, 2023, the undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed and served via the CM/ECF system, which will automatically send electronic notification of such filing to all registered parties.

                                               */s/ Stanley E. Woodward, Jr.*
                                     Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
                                     BRAND WOODWARD LAW, LP
                                     1808 Park Road, Northwest
                                     Washington, DC  20010
                                     202-996-7447 (telephone)
                                     202-996-0113 (facsimile)
                                     Stanley@BrandWoodwardLaw.com