UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>–v.–<br><br>PETER K. NAVARRO,<br><br>*Defendant*. | Case No. 1:22-cv-2292 |

**SEALED NOTICE IN RESPONSE TO DECEMBER 20, 2023 ORDER**

This matter involves an effort by the United States to retrieve from Defendant Peter K. Navarro certain Presidential records sent and received on Defendant's personal email account(s). On September 26, 2022, the United States moved for summary judgment, *see* Mot. for Summ. J., ECF No. 7. Defendant subsequently moved to dismiss the lawsuit, *see* Mot. to Dismiss, ECF No. 9, and opposed the United States's motion for summary judgment, *see* Def.'s Opp'n to the United States's Mot. for Summ. J., ECF No. 11. On March 9, 2023, the Court issued an order denying Defendants' motion to dismiss, granting the United States's motion for summary judgment, and ordering Defendant to "produce . . . the 200 to 250 documents that his counsel has identified as Presidential records forthwith" and to meet and confer with the United States regarding the search terms and methodology to be used "to unequivocally identify Presidential records in Defendants' possession." Order & Judgment, ECF No. 15; *see also* Mem. Opinion (Mar. 9, 2023), ECF No. 16.

After the Court's order, the parties conferred and filed a Joint Status Report reflecting a purported agreement regarding the scope and timing of Defendant's search for Presidential records. *See* Jt. Status Report, ECF No. 24. The Court adopted the parties' agreement in an April 12, 2023 Minute Order. Yet, when the deadline came for Defendant to complete its searches, Defendant revealed that he had not completed the agreed-upon searches, and that he did not intend to do so. *See*

1

*generally* Status Report, ECF No. 27. Accordingly, the United States filed a motion to enforce this Court's judgment on May 31, 2023. *See* Mot. to Enforce, ECF No. 30.

On August 31, 2023, the Court entered an order granting the Motion to Enforce in part and holding the remainder of the motion in abeyance. *See* Order, ECF No. 32. In that order, the Court required Defendant to "file under seal a notice listing all search terms used, the metadata fields searched, and the email accounts searched" and to "deliver to Chambers a random sample of fifty emails across each account searched that were not identified as responsive in his last review." *Id.* The United States understands that Defendant complied with that order on October 16, 2023. *See* Sealed Notice, ECF No. 33.

In the October 16, 2023 notice, Defendant identified the search terms used to identify potential Presidential records in his possession. *Id.* In that notice, Defendant stated that "government counsel has previously taken the position in a related case, *United States v. Navarro*, No. 2[2]-cr-200 (D.D.C.), that any work Dr. Navarro undertook as part of the 2020 Presidential Election was done in his personal, and not professional[,] capacity." *See id.* at 1. Defendant raises this point in connection with his claim that he utilized search terms including, *inter alia*, "Election" and "Fraud." *Id.* Defendant represents that, notwithstanding the government's purported position in his criminal case, "defense counsel undertook a review of such correspondence to better understand the nature of the same." *Id.* Based on the ambiguous language in the notice, it is not clear to the United States whether and to what extent Defendant withheld any records that hit on search terms related to the 2020 Presidential Election on the basis that such records were not Presidential records.

In any event, on December 20, 2023, the Court entered an order under seal directing counsel for the United States to "file, under seal, an explanation of its position in *United States v. Navarro*, No. 22-cr-200 (D.D.C.), as it relates to Defendant's statement in his sealed notice[.]" Order, ECF No. 34. Accordingly, the United States provides the following explanation.

In *United States v. Navarro*, No. 22-cr-200 (D.D.C.), Defendant was indicted, and ultimately found guilty on, two counts of contempt of Congress stemming from his failure to comply with a subpoena issued by the United States House Select Committee to Investigate the January 6th Attack

on the United States Capitol.  *See* Indictment, *United States v. Navarro*, No. 22-cr-200 (D.D.C. June 2, 2022), ECF No. 1; Jury Verdict as to Peter K. Navarro, *United States v. Navarro*, No. 22-cr-200 (D.D.C. Sept. 7, 2023), ECF No. 128.  In connection with those proceedings, Defendant argued that both executive privilege and testimonial immunity excused his noncompliance with the Committee's subpoena.  *See* United States' Br. on Def. Navarro's Unsupported Claims of Executive Privilege & Testimonial Immunity at 1, *United States v. Navarro*, No. 22-cr-200 (D.D.C. March 14, 2023), ECF No. 79 ("U.S. Brief").  In response, the United States argued that (1) Defendant had offered no evidence that former President Trump had purported to invoke executive privilege or testimonial immunity, and (2) even if the privilege had been invoked, "those assertions would not have justified the Defendant's categorical non-compliance with the subpoena as to either the documents in his possession or his appearance at the deposition."  *See, e.g.*, *id.* at 1, 9.

With respect to the second argument, the United States explained that any assertion of executive privilege or testimonial immunity would not justify "a complete default on the Committee's subpoena[,]" because most of the information sought by the subpoena related to matters undertaken in Defendant's personal capacity, rather than his official capacity.  *See id.* at 15 (noting that "the Committee informed the Defendant that most of the information it was seeking did not concern communications he took in his capacity as presidential adviser at all, but instead related to matters undertaken in his personal capacity with persons outside the government"); *id.* at 16-17 (noting that "[a]s with the alleged assertion of executive privilege, any such assertions of testimonial immunity therefore would have been germane only (at most) to the Defendant's testimony about a fraction of the subjects about which the Committee informed him it wished to inquire at the deposition"); *see also* Tr. of Mot. Hr'g Proceedings, at 41:17-20, *United States v. Navarro*, No. 22-cr-200 (D.D.C. Dec. 14, 2022), ECF No. 64 (government counsel noting that "[t]his subpoena was given to the defendant to talk about a subject matter that he did not handle in his official capacity"); *id.* at 48:4-20 (discussing specific topics that Defendant claimed to handle in his personal capacity); *see also* Tr. of Pretrial Conference Proceedings at 27:7-8, *United States v. Navarro*, No. 22-cr-200 (D.D.C. Jan. 30, 2023), ECF No. 76 (explaining that Defendant "was being asked about matters that were not official acts").  The

distinction between official and unofficial acts was relevant because even a reasonable assertion of executive privilege or testimonial immunity "could not have been grounds for the Defendant to refuse to testify altogether," as it would only have covered "particular documents or testimony seeking information about communications between the Defendant and the former President himself" or "about testimony concerning matters related to the Defendant's official duties." U.S. Brief at 17.

      As detailed above, the United States has taken the position that certain of Defendant's actions related to the 2020 Presidential Election were undertaken in his personal capacity, and therefore that the subpoena at issue sought at least some information about actions undertaken in Defendant's personal capacity. However, the United States has not taken the position that every action that Defendant took in connection with the 2020 Presidential Election was done in his personal, and not official, capacity; nor has the United States taken the position that any communications related to the 2020 Presidential Election are not Presidential records. The United States does not know whether Defendant has withheld emails on the basis that they involve work that Defendant undertook in his personal capacity, nor does it know how Defendant would define the contours of work conducted in his personal, as opposed to official, capacity. Therefore, the United States cannot state for certain whether such emails would constitute Presidential records. However, it is possible that Defendant conducted official business related to the 2020 Presidential Election over email, and that such emails would constitute Presidential records. To illustrate this point, imagine a hypothetical email from Defendant—whose official duties included coordinating the use of the Defense Production Act to respond to the COVID-19 pandemic, *see* Statement of Material Facts ¶ 5, ECF No. 7.2—to another government official discussing options for providing funding or equipment to help states respond to the impact of the COVID-19 pandemic on the 2020 federal election cycle. Such an email would both be related to the 2020 Presidential Election and likely undertaken in Defendant's official capacity.

      Again, the Government does not know the nature of communications sent to or from Defendant's personal email accounts that have not been produced to the United States, so it cannot say what sort of correspondence may or may not exist, or whether such correspondence would constitute a Presidential record. But to the extent that Defendant intends to suggest that the United

4

States has taken the position that any emails related to the 2020 Presidential Election are not Presidential records, that is incorrect.

Dated: December 29, 2023                            Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIAN D. NETTER
Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director
Federal Programs Branch

/s/ *Alexandra R. Saslaw*
ALEXANDRA SASLAW
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Tel: (202) 514-4520
Email: alexandra.r.saslaw@usdoj.gov

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

On December 29, 2023, the undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed via the CM/ECF system, which will automatically send electronic notification of such filing to all registered parties. Additionally, because this document is filed under seal, undersigned counsel shall transmit an electronic copy of this document and the Notice of Electronic Filing to lead counsel for Defendant, Stanley Edmund Woodward, Jr., via email.

/s/ *Alexandra R. Saslaw*
ALEXANDRA SASLAW
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Tel: (202) 514-4520
Email: alexandra.r.saslaw@usdoj.gov

*Counsel for Plaintiff*