IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>PETER K. NAVARRO,<br><br>Defendant. | )<br>)<br>)  Case No. 1:22-cv-02292-CKK<br>)<br>)<br>)<br>)<br>)<br>) |

## RESPONSE TO SHOW CAUSE ORDER

Defendant Dr. Peter K. Navarro respectfully submits this response to the Court's February 20, 2024, Order directing Dr. Navarro to, "show cause why he should not be held in contempt of the Court's judgment." Order at 6 (Feb. 20, 2024) (ECF No. 38).

On August 3, 2022, the United States filed a complaint in the underlying action seeking the return of Presidential records in the possession of Dr. Navarro. *See generally* Complaint (Aug. 3, 2022) (ECF No. 1). On September 26, 2022, the United States moved for Summary Judgment. Mot. (Sep. 26, 2022) (ECF No. 7). On October 11, 2022, Dr. Navarro moved to dismiss the Complaint on the basis that it failed to state a claim. Mot. (Oct. 11, 2022) (ECF No. 9). On March 9, 2023, the Court granted summary judgment in favor of the United States and denied Dr. Navarro's motion to dismiss. Order (March 9, 2023) (ECF No. 15). The Court Ordered Dr. Navarro to produce previously identified Presidential records, and for the Parties to confer about a schedule of proceedings to otherwise ensure compliance with the Court's Order. Order and Judgment. (Mar. 9, 2023) (ECF 15).

The Court adopted the Parties' proposed schedule, Minute Order (Apr. 12, 2023), and on May 15, 2024, the Parties submitted competing Status Reports. Gov't Status Report (May 15, 2023) (ECF No. 26) Def. Status Report (May 15, 2023) (ECF No. 27). The Court subsequently

1

entered a second Order directing Dr. Navarro to conduct additional searches and produce any Presidential records identified pursuant to those searches. Order (May 19, 2023) (ECF No. 28). Dr. Navarro filed a subsequent Status Report indicating his belief that he had fully complied with the Court's Orders. Status Report (May 27, 2023) (ECF No. 29). The United States, however, disagreed, and filed a motion to enforce the Court's judgment. Mot. (May 31, 2023) (ECF No. 30). The Court then Ordered Dr. Navarro to disclose the search terms he utilized to assure compliance with the Court's Order and also directed Dr. Navarro to submit a random sample of 50 emails for the Court's review. Order (Aug. 31, 2023) (ECF No. 32). Dr. Navarro provided the same on October 16, 2023. Notice (ECF No. 33) (Under Seal).

On December 20, 2023, the Court requested clarification of the United States regarding its position regarding whether Dr. Navarro's work with respect to the integrity of the 2020 election could constitute official business (and thus records related thereto would be Presidential records). Order (Dec. 20, 2023) (ECF No. 34). The United States advised that such work could constitute official business. Response (Dec. 29, 2023) (ECF No. 35). And following a review of Dr. Navarro's submission, the Court concluded Dr. Navarro continued to possess Presidential records in violation of the Court's Orders. Order to Show Cause (Feb. 20, 2024) (ECF No. 38).

Specifically, the Court found that twelve (12) of the emails provided as part of a random sampling were Presidential records and that an additional sixteen (16) were potentially Presidential records, ultimately concluding that Dr. Navarro's error rate – between 24% and 56% was unacceptably high. *See Meeropol v. Meese*, 790 F.2d 942, 960 (D.C. Cir. 1986) ("When coupled with the finding by the district court that the FBI had been 'intransigent' in 1975, that error rate [25%] is unacceptably high, and suggests to us that many of the documents processed in 1975 were improperly withheld."), *quoted in* Order at 5 (Feb. 20, 2024) (ECF No. 38).

Accordingly, the Court Ordered Dr. Navarro to, "reprocess the remaining records in his possession . . . in accordance with" the Court's Order, "to determine whether additional records are identified as responsive and can be produced to Plaintiff prior to this matter being assigned to a magistrate judge." *Id.* at 6. Finally, the Court directed Dr. Navarro, by March 21, 2024, to show cause why he should not be held in contempt for failure to comply with the Court's Orders. *Id.*

"[A] party can justify its failure to comply with a court order by establishing its inability to comply or good faith substantial compliance." *SEIU Nat'l Indus. Pension Fund v. Artharee*, 48 F. Supp. 3d 25, 30 (D.D.C. 2014) (Kollar-Kotelly, J.). "In proving good faith substantial compliance, the contemnor must show that it 'took all reasonable steps within [its] power to comply.'" *Int'l Painters & Allied Trades Indus. Pension Fund v. Zak Architectural Metal & Glass LLC*, 736 F. Supp. 2d 35, 38 (D.D.C. 2010) (quoting *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 103 F.3d 1007, 1017 (D.C. Cir. 1997)).

The Presidential Records Act defines "Presidential records" as:

> [D]ocumentary materials, or any reasonably segregable portion thereof, created or received by the President, the President's immediate staff, or a unit or individual of the Executive Office of the President whose function is to advise or assist the President in the course of conducting activities which relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President.

44 U.S.C. § 2201(2). White House staff, including Dr. Navarro, are advised of the requirement that Presidential records are to be preserved, and directed to forward any personal email, "that qualifies as a presidential record," to their official email account. *See* Ex. 1, Complaint (Aug. 3, 2022) (ECF No. 1). White House employees, however, are not provided any further guidance on what makes a record Presidential, or personal.

3

Dr. Navarro submits that he substantially complied with the Court's Orders directing him to produce Presidential records. First, Dr. Navarro relied on the advice of counsel for his interpretation of what is a Presidential record. Second, although the Court has construed the PRA to categorize additional emails of Dr. Navarro as Presidential records, Dr. Navarro submits that his original interpretation was not unreasonable. Dr. Navarro's email correspondence can be roughly grouped into four (4) categories: China-related correspondence; Hydroxychloroquine or COVID-19 related correspondence; 2020 Election Integrity correspondence; and correspondence related to President Biden's ties to China. None of these categories obviously, "relate[s] to or ha[s] a direct affect upon the carrying out of constitutional, statutory, or other official or ceremonial duties of the President." 44 U.S.C. § 2201(2)(B). Indeed, although the United States now contends Dr. Navarro's work related to the integrity of the 2020 Presidential Election may have been part of his official business, Response (Dec. 29, 2023) (ECF No. 35), it took exactly the opposite position when it prosecuted him for failing to produce records related to the 2020 Presidential Election in response to a congressional subpoena. *See*, *e.g.*, Gov't Sentencing Memo. (Jan. 18, 2024) (ECF No. 159).

Specifically, with respect to the twelve (12) emails the Court concluded were Presidential records, Dr. Navarro submits that there was a good faith basis to argue they were personal, and not Presidential, records. Dr. Navarro proffers the following explanations for why, statutorily, the records were not Presidential records (although all have now been produced to the United States):

| Doc Number | Statutory Exemption | Description |
|---|---|---|
| DCD_Review_000002 | 44 U.S.C. § 2201(2)(B) | Political activity that does not "relate to or have a direct affect upon the carrying out of constitutional, statutory, or other official or ceremonial duties of the President." |

4

| | | |
|---|---|---|
| DCD_Review_000006 | 44 U.S.C. § 2201(2)(B), (3)(C) | Political activity that does not "relate to or have a direct affect upon the carrying out of constitutional, statutory, or other official or ceremonial duties of the President;" or "materials directly relating to the election of a particular individual or individuals to Federal, State, or local office, which have no relation to or direct effect upon the carrying out of constitutional, statutory, or other official or ceremonial duties of the President." |
| DCD_Review_000137 | 44 U.S.C. § 2201(3) | Personal record, "of a purely private or nonpublic character which do not relate to or have an effect upon they carrying out of the constitutional, statutory, or other official or ceremonial duties of the President." |
| DCD_Review_000251 | 44 U.S.C. § 2201(3) | Personal record, "of a purely private or nonpublic character which do not relate to or have an effect upon they carrying out of the constitutional, statutory, or other official or ceremonial duties of the President." |
| DCD_Review_000389 | 44 U.S.C. § 2201(2)(B) | Does not, "relate to or have a direct affect upon the carrying out of constitutional, statutory, or other official or ceremonial duties of the President." |
| DCD_Review_000434 | 44 U.S.C. § 2201(2)(B) | Does not, "relate to or have a direct affect upon the carrying out of constitutional, statutory, or other official or ceremonial duties of the President." |
| DCD_Review_000438 | 44 U.S.C. § 2201(3)(A), (C) | Diary, journal, or functional equivalent, "not prepared or utilized for, or circulated or communicated in the course of, transacting Government business" or relating to 2020 election and, "no relation to or direct effect upon . . . duties of the president." |
| DCD_Review_000452 | 44 U.S.C. § 2201(2)(B) | Does not, "relate to or have a direct affect upon the carrying out of constitutional, statutory, or other official or ceremonial duties of the President." |
| DCD_Review_000480 | 44 U.S.C. § 2201(2)(B) | Does not, "relate to or have a direct affect upon the carrying out of constitutional, statutory, or other official or ceremonial duties of the President." |

| | | |
|---|---|---|
| DCD_Review_000483 | 44 U.S.C. § 2201(3)(A) | Diary, journal, or functional equivalent, "not prepared or utilized for, or circulated or communicated in the course of, transacting Government business." |
| DCD_Review_000526 | 44 U.S.C. § 2201(3)(A) | Diary, journal, or functional equivalent, "not prepared or utilized for, or circulated or communicated in the course of, transacting Government business." |
| DCD_Review_000519 | 44 U.S.C. § 2201(3)(A) | Diary, journal, or functional equivalent, "not prepared or utilized for, or circulated or communicated in the course of, transacting Government business." |

With respect to the additional sixteen (16) records the Court identified as potentially Presidential records, Dr. Navarro submits that he should not be held in contempt for not identifying records the Court itself was unable to conclude were Presidential records. At bottom, this case exemplifies the problem with enforcing the Presidential Records Act. For example, although the Court acknowledges that several of the records it has ordered produced to the United States appear to be, "journal entries in which [Dr. Navarro] writes about various aspects of his life," it nevertheless finds that such entries are not personal insofar as they, "include work-related topics" and thus may have been, "prepared or utilized for . . . transacting Government business." Order at 4-5 (Feb. 20, 2024) (ECF No. 38) (quoting 44 U.S.C. § 2201(3)(A)). Dr. Navarro submits that his conclusion that such records were personal, and not Presidential, constitutes "substantial compliance" with this Court's Orders.

Nevertheless, following the Court's February 20 Order, Dr. Navarro produced an additional 472 documents (2,768 pages) that arguably are Presidential records pursuant to the Court's determination of the same. Of the 1,838 emails sent or received by Dr. Navarro from his personal email account between January 20, 2017, and January 20, 2021, only 900 remain unproduced to the United States. And although Dr. Navarro submits these emails are purely personal, as defined by the Presidential Records Act, Dr. Navarro respects, but object to, the

Court's conclusion that, "additional supervision of [Dr. Navarro's] compliance with this Court's judgment is warranted."  Order at 6 (Feb. 20, 2024) (ECF No. 38).

As the Supreme Court has recognized:  "It is well settled that the Fourth Amendment's protection extends beyond the sphere of criminal investigations."  *City of Ontario v. Quon*, 560 U.S. 746, 755-756 (2010).  Dr. Navarro had a reasonable expectation of privacy when he used his personal email to, *inter alia* record diary entries.  And where *the government* seeks to pierce an individual's right to privacy absent a warrant, such as where, "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable," *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995), *the government* must nevertheless show, "some quantum of individualized suspicion."  *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 624 (1989).  Here, as the Court recognizes, there has been no inquiry into the purpose or motive behind Dr. Navarro's exchange of email correspondence the Court now insists upon government review of.  Accordingly, the same contravenes the precepts of the Fourth Amendment and should be precluded and Dr. Navarro, respectfully, objects to the same.

[SIGNATURE ON NEXT PAGE]

Dated: March 21, 2024                     Respectfully submitted,

*/s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
Stan M. Brand (D.C. Bar No. 213082)
BRAND WOODWARD LAW, LP
400 Fifth Street, Northwest, Suite 350
Washington, DC  20001
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel for Defendant Dr. Peter K. Navarro*

## **CERTIFICATE OF SERVICE**

On March 22, 2024, the undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed and served via the CM/ECF system, which will automatically send electronic notification of such filing to all registered parties.

                                           */s/ Stanley E. Woodward, Jr.*
                                      Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
                                      BRAND WOODWARD LAW, LP
                                      400 Fifth Street, Northwest, Suite 350
                                      Washington, DC  20001
                                      202-996-7447 (telephone)
                                      202-996-0113 (facsimile)
                                      Stanley@BrandWoodwardLaw.com