**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. 1:22-cv-02292-CKK-GMH |
| | ) | |
| PETER K. NAVARRO, | ) | |
| | ) | |
| *Defendant.* | ) | |
| _____ | ) | |

**DECLARATION OF KATE DILLON MCCLURE REGARDING CATEGORY 1**

I, Kate Dillon McClure, hereby declare as follows:

1. I am the Director of the Archival Operation Division in the Office of Presidential

   Libraries at the National Archives and Records Administration (NARA) and have held

   this position since May, 2024. Prior to becoming the Director,  I served as Acting

   Director of the White House Liaison Division and an archivist in the Presidential Library

   system since 1996.  In those positions I was responsible for working with modern

   Presidential records administered under the Presidential Records Act. I hold a Bachelor

   of Arts degree in English and History from the University of Pittsburgh and a Master of

   Arts and a Master of Library Science from the University of Maryland.

2. The statements contained in this declaration are based upon my personal knowledge,

   upon information provided to me in my official capacity, and upon conclusions and

   determinations reached and made in accordance therewith.

3. This declaration addresses the Court's November 18, 2024 order directing NARA to

   provide its views on the scope of the Presidential Records Act (PRA) as it applies to the

   documents in Category 1, which are documents that "appear to be communications with

others on various issues within Navarro's White House portfolio," as described in ECF
No. 53, at 3.

4.  The scope of the PRA is very broad and is intended to cover all communications that are
created or received by White House employees that relate to the constitutional, statutory,
or other official or ceremonial duties of the President and his administration. This view is
reflected in the PRA's definition of the term "Presidential records," which encompasses
all "documentary materials, or any reasonably segregable portion thereof, created or
received by the President, the President's immediate staff, or a unit or individual of the
Executive Office of the President whose function is to advise or assist the President, in
the course of conducting activities which relate to or have an effect upon the carrying out
of the constitutional, statutory, or other official or ceremonial duties of the President." 44
U.S.C. § 2201(2). Nothing in the statute limits the definition of a Presidential record to
the "portfolio" or formal scope of responsibilities of each individual White House
official.

5.  The definition of a Presidential record includes, among other things, any communication
that an official receives because of their official position, including from journalists,
commentators, and other non-governmental persons. The fact that a White House official
may have had a prior professional or personal relationship with a journalist,
commentator, or other non-governmental person does not mean a communication from or
to that person is not a Presidential record if it otherwise meets the statutory definition.

6.  The legislative history of the PRA confirms the breadth of what constitutes a Presidential
record. House Report No. 95-1487 on the Presidential Records Act of 1978 (1978
U.S.C.C.A.N. at 5732) explains that "'Presidential records' is defined to mean *any*

*documentary material* connected with the execution of the constitutional, statutory or other official and ceremonial duties of the President," that "[t]he term 'presidential records' is intended, however, to encompass all White House and Executive Office records, except those of a purely private or nonpublic nature," and that "[t]he scope of this term is *very broad* since a great number of what might ordinarily be construed as one's private activities are, because of the nature of the presidency, considered to be of a public nature, i.e., they affect the discharge of his official or ceremonial duties." *Id*. at 11-12, 1978 U.S.C.C.A.N. at 5742-43 (emphasis added).

7.  The exclusion of personal records was intended to ensure the PRA did not impinge on the President's First Amendment right to free speech or political association by including as government property records that might have a tangential effect on his or his staff's official or ceremonial responsibilities but consist of purely personal political communications. *Id.* at 11. The House Report on the PRA more simply defined personal records "as those materials which are neither developed in connection with nor utilized during the transaction of government business." *Id. at* 3.

8.  Thus, a personal record is not merely one that relates to a White House official's personal affairs or private contacts. Rather, to be a personal record, the document must have a "purely private or nonpublic" character; that is, the record must have no relationship to the President's official or ceremonial duties.

9.  Traditionally, at the beginning of each new Administration, the White House Counsel issues a memo to all White House staff detailing their responsibilities under on the PRA. On February 22, 2017, Counsel to the President Donald F. McGahn issued a memo to all White House personnel titled, "Presidential Records Act Obligations" (hereinafter,

"McGahn PRA Memo"), which is posted on NARA's website at:

https://www.archives.gov/files/foia/Memo%20to%20WH%20Staff%20Re%20Presidenti
al%20Records%20Act%20(Trump,%2002-22-17)_redacted%20(1).pdf

10. The McGahn PRA Memo starts by explaining that "'Presidential records' are *broadly*
    defined" (emphasis added) and then quotes the statutory definition on how Presidential
    records are "documentary materials . . . *created or received* . . . ." (emphasis added).  The
    memo then emphasizes that:

    > *If you ever send or receive email that qualifies as a presidential record using any*
    > *other account, you **must** preserve that email by copying it to your official EOP*
    > *email account or by forwarding it to your official email account within twenty*
    > *(20) days. After preserving the email, you must delete it from the non-EOP*
    > *account. **Any employee who intentionally fails to take these actions may be***
    > ***subject to administrative or even criminal penalties**.*

    (Italics and bold in original.)

11. In sum, the text and legislative history of the PRA confirm that a Presidential record is
    one that relates, in any way, to the official duties of the President and his administration
    and does not have a purely private or nonpublic character. Accordingly, the 38 emails
    "about White House policy" listed by the Court as comprising Category 1 would appear
    to constitute Presidential records under the PRA, regardless of whether the
    communications were with journalists or others who knew Mr. Navarro prior to his White
    House service.

4

Executed this 22nd day of November, 2024.

_____

Kate Dillon McClure
Director
Archival Operations Division
Office of Presidential Libraries
National Archives and Records Administration
Washington, DC 20408